UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| RUMBLE INC. and TRUMP MEDIA & TECHNOLOGY GROUP CORP.<br><br>Plaintiffs,<br><br>v.<br><br>ALEXANDRE DE MORAES, Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil<br><br>Defendants. | Civil Action No.<br>8:25-cv-00411-CEH-AAS |

**DECLARATION OF STACEY BEALL IN SUPPORT OF PLAINTIFFS' *EX PART* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AS TO WHY A <u>PRELIMINARY INJUNCTION SHOULD NOT ISSUE</u>**

I, Stacey Beall, declare and state as follows:

1.   I am over 18 years of age, and I have personal knowledge of the facts set forth herein. I make this declaration in support of the *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause as to Why a Preliminary Injunction Should Not Issue filed on behalf of Plaintiff Rumble Inc. ("Rumble") and Plaintiff Trump Media & Technology Group Corp. ("Trump Media") (together, "Plaintiffs") against Defendant Alexandre de Moraes ("Defendant"). If called upon to do so, I could and would competently testify to the following facts set forth below.

1

2. I am the Associate General Counsel of Rumble, acting as interim General Counsel, and am based in Florida. In this capacity, I oversee Rumble's legal compliance and regulatory affairs, advise on corporate governance matters, manage the company's litigation, and supervise the development of Rumble's video-sharing and cloud-based hosting policies.

3. I submit this declaration based on my personal knowledge and in my official capacity as Associate General Counsel, interim General Counsel of Rumble.

4. Rumble is a Delaware corporation headquartered in Longboat Key, Florida, and founded in 2013 as a video-sharing service dedicated to free speech, open discourse, and debate. Rumble began its beta cloud hosting services in 2022, with a public launch in 2024. Rumble allows third-party users to upload videos for online streaming and sharing at Rumble.com. These videos are available online to users in the United States, one of Rumble's main audiences, and other countries, including Brazil. Rumble.com features videos in various categories, including "Picks," "Top Live Categories," "Recommended Creators," "Finance," "News," and "Music."

5. By 2021, Rumble had evolved into a thriving haven for a wide variety of independent content creators—ranging from citizen journalists to educators—many of whom sought an alternative to mainstream tech providers perceived as overzealous in censoring legally protected viewpoints. In doing so, Rumble cultivated a robust user community and became widely regarded as a key

counterbalance to bigger service providers whose restrictive policies had begun to erode public trust in the marketplace of ideas.  Rumble welcomes a broad array of perspectives that enrich the global exchange of information.

6. To ensure open and honest debate, Rumble enforces a transparent content moderation policy and abides by applicable U.S. laws while steadfastly protecting its users' freedom of expression.  For example, Rumble removes videos that Rumble determines are inciting violence or unlawful acts, harassing, threatening, or otherwise in violation of Rumble's content moderation policy.

7. Rumble maintains its primary office, conducts management, technology, and administrative functions, employs principal staff, and performs other key corporate functions at its headquarters in Longboat Key, Florida.  Rumble operates one of its main data centers and servers in Tampa, Florida.  Rumble does not own or operate any entities in Brazil, nor does it maintain any employees, bank accounts, or other business operations (including servers) there.

8. Rumble built its cloud-hosting services to provide an independent, neutral hosting backbone for its platform.  Rumble's servers house videos, user data, and infrastructure code.  They are physically located in the United States and managed by Rumble's Florida based IT and data center personnel.

9. Similarly, the head of Rumble's content moderation team is located in Florida, and Rumble's U.S. legal department is run out of Florida, meaning that

employees who review and enforce Rumble's user and company policies work in Florida and depend on Florida-based infrastructure.

10. Rumble's status as a Florida business is not incidental. The company proudly operates in the free state of Florida, building a technology infrastructure and team here to protect a free and open internet. Thus, any foreign gag orders seeking to restrict content on Rumble not only directly target Rumble's physical workflows and systems in Florida, but also Rumble's business purpose.

11. Rumble was recently provided with sealed orders from the Supreme Federal Tribunal of the Federative Republic of Brazil ("SFT") requiring Rumble to suspend certain accounts of a certain user ("Political Dissident A"), prevent his creation of new accounts, suspend the transfer of funds for his accounts resulting from monetization and other purposes, produce information related to his accounts, and also appoint a legal representative in Brazil to accept service on behalf of Rumble (the "Gag Orders"). Failure to comply will result in daily monetary penalties in the thousands and a forced shutdown of Rumble in Brazil (which implicate Rumble's infrastructure and operations in Florida). The documents attached as Exhibits 22 through 26 to the Declaration of Andrew Smith are true and correct copies of the Gag Orders.

12. It is our understanding that the SFT first attempted to serve the Gag Orders on Rumble's prior counsel located in Brazil, who refused service. The court then attempted service by sending the Gag Orders to Rumble through email on

various dates. The emails were sent to Rumble's U.S. legal department (legal@rumble.com) and to me (via my work email). Rumble has not been served with the Gag Orders pursuant to the Brazil-U.S. Mutual Legal Assistance Treaty, letters rogatory, or the Hague Convention.

13. The Gag Orders seek to censor content from Political Dissident A, but they do not identify what content from Political Dissident A's Rumble account they consider problematic. No U.S. court has adjudicated the content at issue to be unlawful. As a result, Rumble is not under any recognized U.S. obligation to remove or otherwise block content from Political Dissident A.

14. To comply with the Gag Orders, Rumble would have to disable user accounts and implement technology blocking mechanisms to censor certain users that the Brazil court disfavors. This could mean writing new software code to block certain content or other mechanisms into Rumble's infrastructure algorithms—from the United States, including Florida. Rumble would have to spend substantial employee time and technical resources to identify and censor targeted content. This disruption comes with opportunity costs, as engineers could be working on infrastructure improvements or growth initiatives instead.

15. Additionally, any court-enforced shutdown from the SFT would interfere with Rumble's online functionality and may result in the removal of lawful content in the United States, given that videos and content hosted by Rumble are made available to users in the United States, one of its primary

audiences. A forced shutdown would also directly interfere with the operations of Rumble's customers (like Truth Social) that rely on Rumble's infrastructure in Florida. The Gag Orders are therefore directed at, and acutely felt in, this district.

16. If global providers (such as Google or Apple) acquiesce to the Gag Order's demands, Rumble, and any online platforms (like Truth Social) or users that rely on Rumble's infrastructure would be directly affected.

17. In addition to the engineering strain, the Gag Orders threaten Rumble's well-earned reputation as a neutral online video platform that promotes open discourse. Rumble's entire model is structured around facilitating user-generated content. The Gag Orders would require Rumble to break its promise to "restore the Internet to its roots by making it free and open once again." If Rumble were to start silencing users or removing lawful content at the behest of the Brazil court, it would send a clear signal to all users that their speech on Rumble.com is no longer safe from political interference. Users may self-censor or refrain from posting certain content, undermining the ideas that Rumble supports.

18. This compelled policy change not only harms Rumble's users, but it also undermines the trust and morale of Rumble's Florida-based team who operate under the company's free speech ethos.

19. The erosion of goodwill and user trust cannot be easily quantified in dollars and is extremely damaging and permanent.

20. Rumble will suffer irreparable harm if forced to comply with the Gag Orders. Without immediate injunctive relief, Rumble will lose core First Amendment freedoms, incur lasting damage to goodwill and business relationships, and risk the cessation of their global services. Monetary damages alone would not remedy these injuries.

Docusign Envelope ID: E448B4CF-293B-4504-9182-347651A56828

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.



Stacey Beall
Associate General Counsel, interim General Counsel, Rumble Inc.

Dated: February 21, 2025