## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| RUMBLE INC. and TRUMP MEDIA & TECHNOLOGY GROUP CORP.<br><br>   Plaintiffs,<br><br> v.<br><br>ALEXANDRE DE MORAES, Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil<br><br>   Defendant. | **Civil Action No.<br>25-cv-00411-MSS-AAS** |

## <u>PLAINTIFFS' MOTION FOR ALTERNATIVE SERVICE</u>

### I. INTRODUCTION

Plaintiffs Rumble Inc. ("Rumble") and Trump Media & Technology Group Corp. ("TMTG") (together, "Plaintiffs") seek an order authorizing alternative service of process pursuant to Federal Rule of Civil Procedure 4(f)(3) on Defendant Alexandre de Moraes ("Defendant"), Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil ("STF"), by email.

Defendant has already used email to reach into the United States. He emailed a series of "Gag Orders" directing Rumble—a U.S.-based company— to block accounts of U.S. users, surrender U.S. user data, and appoint an agent

in Brazil. The same channel he used to assert extraterritorial authority is a reliable channel for notice here. Plaintiffs have spent almost six months pursuing formal service under the Hague Service Convention (the "Hague Convention"). Those efforts have stalled not because of any deficiency in Plaintiffs' compliance, but because the Brazilian service process has become politicized and effectively unavailable. Rather than executing service as a ministerial act, Brazilian authorities have interposed additional layers of review and solicited prosecutorial input, including a sealing of the service of process proceedings and sealed recommendations urging that service be blocked altogether in defense of national sovereignty. As a result, there is no reasonable prospect that service will be completed through conventional means within a meaningful timeframe.

Under these circumstances, Rule 4(f)(3) permits, and due process supports, alternative service reasonably calculated to provide notice. Service by email through Defendant's "preferred" email address is direct, reliable, and consistent with due process. It is also the only path that allows this case to move forward on the merits.

## II.   BACKGROUND

### A.   Defendant's Attempts to Serve Rumble Via Email

As detailed in Plaintiffs' Amended Complaint (ECF No. 38) and Supplemental Pleading (ECF No. 46), from February to July 2025, Defendant

2

repeatedly used email to attempt to serve extrajudicial Gag Orders on Rumble, a Florida based company with no operations in Brazil. These orders sought to compel Rumble to block accounts, produce protected U.S.-based user data, and appoint an agent for service in Brazil—all under threat of daily fines and suspension. *See* Exs. 1–5.

On February 9, 2025, Defendant used email to send a Gag Order to Rumble's legal department in Florida ordering Rumble to block various accounts and hand over user data under the threat of significant daily fines. Ex. 1 (Feb. 9, 2025 Email and Gag Order). Two days later, Defendant emailed another Gag Order to Rumble's legal department demanding proof of compliance with his February 9 Gag Order and threatened to shut down Rumble's platform in Brazil. Ex. 2 (Feb. 11, 2025 Email and Gag Order).

On February 19, 2025, Defendant emailed Rumble's legal department another Gag Order demanding Rumble to provide documentary evidence that it appointed a representative in Brazil to accept service—again under the threat of significant daily fines and suspension of Rumble in Brazil. Ex. 3 (Feb. 19, 2025 Email and Gag Order). A few days later, on February 21, 2025, Defendant emailed a Gag Order to Rumble's legal department implementing the complete ban of Rumble's platform in Brazil until all his prior Gag Orders are complied with. Ex. 4 (Feb. 21, 2025 Email and Gag Order).

While this action was pending, and after the U.S. Department of Justice notified Brazil's Central Authority (the "BCA") on May 7, 2025 that email service was improper under the Hague Convention under the circumstances, on July 11, 2025, Defendant again decided to use comunicacaosej@stf.jus.br to email another Gag Order to Rumble's legal department in Florida ordering Rumble to block additional accounts of U.S. users in Florida, and to provide all U.S. user data associated with those accounts. Ex. 5 (July 11, 2025 Email and Gag Order). In his July 11 Gag Order, Defendant stated, "I hereby inform you that the official channels of the Federal Supreme Court for receiving information are: secure electronic mail," among other things.[1] *Id.* The STF's official website also lists gabmoraes@stf.jus.br as one of Defendant's email accounts for receiving information. Ex. 6 (Alexandre de Moraes STF Biography). Having used his own email in attempting to assert cross-border jurisdiction, Defendant cannot now deny that email provides effective notice *to him*, particularly where, as here, all customary routes for service have been actively blocked by Brazilian authorities, as discussed below.

---

[1] The other preferred means of communication identified by Defendant are "Electronic Petitioning, including for confidential proceedings (in the case of parties or lawyers); Electronic Protocol; fax (61- 3217-7921/7922) and Mail (Judicial Protocol of the Federal Supreme Court, Praça dos Três Poderes s/n, Brasília/DF, CEP 70175-900)." Ex. 5.

**B.    Plaintiffs' Service Attempts Under the Hague Service Convention**

Despite publicly acknowledging this lawsuit,[2] Defendant, who currently resides in Brazil, has not appeared before this Court or accepted service. Plaintiffs have pursued service under the Hague Convention since filing their Amended Complaint and Supplemental Pleading. Those efforts have been obstructed through extraordinary and irregular interventions designed to shield Defendant personally from service.

On August 8, 2025, Plaintiffs transmitted a formal service request to the BCA on Forms USM-94, along with all documents to be served pursuant to Article 5 of the Hague Convention. Plaintiffs requested that the BCA cause the documents to be served on Defendant at his last known address in Brazil. Ex. 7 (Hague Service Convention Request and Supporting Documents); Ex. 8 (Email Correspondence Between Counsel and Brazil's Central Authority), Aug. 8, 2025 Email.

The BCA processed Plaintiffs' request for compliance within five days and on August 13 forwarded it to the Brazilian Superior Tribunal of Justice ("STJ"). Ex. 8, Aug. 13, 2025 Email. Counsel for Rumble followed up for confirmation that the request had been fully processed. *Id.* Under Brazilian

---

[2] *Moraes Jokes and Says He Needs a Lawyer in the U.S.*, PODER     360, www.poder360.com.br/poder-justica/moraes-brinca-e-que-esta-precisando-de-advogado-nos-eua/.

law, the STJ is the judicial authority responsible for formally approving incoming requests for service of process from foreign courts pursuant to the Hague Convention. Thereafter, the STJ sends the request to a federal judge for execution of service and, following execution, successful or otherwise, the inverse path is followed through the STJ. The BCA then informs the requesting or forwarding authority of the results of the execution and any other relevant details, including objections. This process is centralized and cannot be completed without the STJ's authorization, even where all formal Convention requirements are satisfied.

Even under ordinary circumstances, service through Brazil's Hague Convention process is slow. In this case, however, it has altogether ceased to function. Rather than approving the request and transmitting it for execution by a federal judge, the STJ departed from standard practice and solicited the views of the Brazilian Prosecutor General's Office (Procuradoria-Geral da República, "PGR") and the Office of the Attorney General of the Union ("AGU"). That intervention has brought the process to a standstill, with no timetable and no assurance that service will ever be effected. Compounding the delay, the PGR submitted a sealed recommendation urging that service be blocked altogether.

On August 15, 2025, Brazilian media reported that the STJ formally received the request from the BCA.[3] The matter was placed under review by the President of the STJ who immediately ordered the proceeding to be placed under seal, which is in and of itself highly unusual in an action for service of process in a civil matter. According to those reports, the notification from the BCA initiated the internal STJ procedure to determine whether service on the Defendant would be authorized under Brazilian law. The media reports further noted that the AGU and the PGR were expected to be consulted as part of that process. The AGU serves as the federal government's civil law office and frequently appears to defend institutional interests of Brazil and its authorities. On August 23, 2025, counsel for Rumble followed up again. Ex. 8, Aug. 23, 2025 Email. The BCA advised on August 25, 2025 that the request was sent to the STJ. Ex. 8, Aug. 25, 2025 Email.

On September 9, 2025, counsel for Rumble again followed up, asking for an estimated timeframe for the STJ's action and, once granted, for the issuance of a summons. Ex. 8, Sept. 9, 2025 email. On September 15, 2025, the BCA informed Plaintiffs that it was not possible to estimate how long the STJ would

---

[3] *STJ decretal sigilo sobre notificação de ação contra Moraes nos EUA*, GAZETO DO POVO (Aug. 15, 2025), https://www.gazetadopovo.com.br/republica/stj-decreta-sigilo-sobre-notificacao-de-acao-contra-moraes-nos-eua/.

take to examine the request for *exequatur* or the timeline for the summons. Ex. 8, Sept. 15, 2025 Email.

Then, on September 25, 2025, the STJ sent the matter to the PGR for a formal opinion on whether it should honor the Hague Convention request. On October 9, 2025, the PGR issued its opinion under seal reportedly recommending against moving forward with the service request in a way that would "notify" the Defendant, framing this action as a matter implicating Brazilian national sovereignty and urging the STJ not to execute the request in the usual way. Ex. 9 (Oct. 15, 2025 Estado Article). According to the news report, the sealed recommendation asserted that the Defendant's conduct— even the challenged actions here—should be deemed "official," not personal, and that allowing service could undermine the independence of the Brazilian judiciary. *Id.* This is a premature adjudication on the merits purporting to decide, without service or any litigation, that Defendant's *ultra vires* actions are immune from scrutiny. For its part, the AGU also opposed the request and reportedly also intervened by seeking to have the request pending with the STJ remain under seal.[4]

---

[4] Laryssa Borges, *Brazil's Superior Court of Justice (STJ) Opens Deadline for the Attorney General's Office (AGU) and the Public Prosecutor's Office (MP) to Present Their Arguments in the Legal Battle Against Alexandre de Moraes*, VEJA (Aug. 31, 2025), https://veja.abril.com.br/politica/stj-abre-prazo-para-agu-e-mp-se-manifestarem-em-batalha-juridica-contra-alexandre-de-moraes/.

The obstruction is even more striking given the context. In July 2025, the U.S. Department of Treasury Office of Foreign Asset Control ("OFAC") sanctioned Defendant under the Global Magnitsky Human Rights Accountability Act for "abusive judicial overreach" and "serious human rights abuse," including for issuing orders to U.S. companies "to block or remove hundreds of accounts" for political censorship.[5] The OFAC announcement noted that the Defendant "has used his position to weaponize courts, authorize arbitrary pre-trial detentions, and suppress freedom of expression."[6]

That same month, the White House issued an Executive Order finding that "Brazilian Supreme Court Justice Alexandre de Moraes has abused his judicial authority to target political opponents, shield corrupt allies, and suppress dissent, often in coordination with other Brazilian officials."[7]

---

[5] Press Release, *Treasury Sanctions Alexandre de Moraes*, U.S. DEP'T OF TREASURY (July 30, 2025), https://home.treasury.gov/news/press-releases/sb0211.

[6] Marco Rubio, Secretary of State, Press Statement, *Sanctioning Support Network of Brazilian Judge Alexandre de Moraes*, U.S. DEP'T OF STATE Dep (Sept. 22, 2025), https://www.state.gov/releases/office-of-the-spokesperson/2025/09/sanctioning-support-network-of-brazilian-judge-alexandre-de-moraes. The U.S. Department of Treasury recently rescinded the Magnitsky designation. *See Global Magnitsky Designations Removals*, U.S. DEP'T OF TREASURY (Dec. 12, 2025), https://ofac.treasury.gov/recent-actions/20251212. The recession did not include any finding that the conduct described in the original designation was inaccurate, nor did it withdraw or contradict the factual descriptions quoted here. The factual context remains relevant to Defendant's actions and to the gravity of Defendant's extraterritorial interference.

[7] July 30, 2025 Executive Order, § 1, https://www.whitehouse.gov/presidential-actions/2025/07/addressing-threats-to-the-us/.

Nearly two months passed without further communication from the BCA. On November 11, 2025, counsel for Rumble followed up again, but received no assurance that service will ever be completed. Ex. 8 (Nov. 11, 2025 Email).

The difficulties Plaintiffs have encountered through the Hague Convention are occurring against the backdrop of an extraordinary and ongoing institutional controversy involving the Defendant himself that has materially altered the practical realities of service. Recent public reporting underscores why traditional service channels in Brazil are uniquely unlikely to function with neutrality and reasonable speed in this case.[8]

In December 2025, Brazilian media widely reported allegations linking the Defendant to what has since become known as the "Banco Master" scandal, involving one of the largest financial collapses in Brazilian history.[9] Banco

---

[8] Plaintiffs do not ask this Court to adjudicate, endorse, or resolve the truth of any allegations concerning Banco Master, Daniel Vorcaro, or any related conduct attributed in the Brazilian press to Defendant or members of his family. These widely reported facts are cited solely for the limited and procedural purpose of demonstrating the practical context in which service of process must occur—namely, the presence of heightened institutional sensitivity, extraordinary secrecy, and strong incentives for delay or avoidance that bear directly on the feasibility and timeliness of executing service. Courts routinely consider such contextual factors when assessing whether service through traditional channels is impracticable and whether alternative service is warranted. *See* Fed. R. Civ. P. 4(f)(3).

[9] *See, e.g.*, *Opposition articulates pressure during recess to try to impeach minister Alexandre de Moraes*, LNG (Dec. 29, 2025), https://lnginnorthernbc.ca/2025/12/29/opposition-articulates-pressure-during-recess-to-try-to-impeach-minister-alexandre-de-moraes/; *Banco Master case puts Supreme Court justice under scrutiny*, INTERNATIONAL VALOR (Dec. 23, 2025), https://valorinternational.globo.com/law/news/2025/12/23/banco-master-case-puts-supreme-court-justice-under-scrutiny.ghtml; Malu Gaspar, *O valor milionário do contrato da mulher de Alexandre de Moraes com o enrolado Banco Master*, O GLOBO (Dec. 9, 2025),

Master, controlled by a Brazilian businessman named Daniel Vorcaro, was placed into liquidation by Brazil's Central Bank after regulators identified serious irregularities, including the transfer of large volumes of fictitious assets to a state-owned bank called BRB, exposing Brazilian public institutions to losses reported in the billions of dollars. Brazilian federal authorities subsequently opened criminal investigations into Banco Master, Vorcaro, and senior executives for fraud and money laundering. The matter has been described by major Brazilian outlets as potentially the costliest banking failure ever imposed on Brazil's financial system.

Against that backdrop, on December 9, 2025, Brazil's largest media outlet revealed that Banco Master had entered into a contract in early 2024 to pay approximately US $23 million over three years to the law firm of Viviane Barci de Moraes, the wife of the Defendant, for broadly defined legal and "institutional" representation before courts, regulators, and legislative bodies.[10] The contract contemplated payments in the order of approximately

---

https://oglobo.globo.com/blogs/malu-gaspar/post/2025/12/o-valor-milionario-do-contrato-da-mulher-de-alexandre-de-moraes-com-o-enrolado-banco-master.ghtml; *Veja a cronologia do caso Master e as atuações de Moraes e do BC*, CNN (Dec. 24, 2025), https://www.cnnbrasil.com.br/politica/veja-a-cronologia-do-caso-master-e-as-atuacoes-de-moraes-e-do-bc/.

[10] Malu Gaspar, *O valor milionário do contrato da mulher de Alexandre de Moraes com o enrolado Banco Master*, O GLOBO (Dec. 9, 2025), https://oglobo.globo.com/blogs/malu-gaspar/post/2025/12/o-valor-milionario-do-contrato-da-mulher-de-alexandre-de-moraes-com-o-enrolado-banco-master.ghtml. Messages seized from Vorcaro's phone by the Brazilian federal police reportedly show that payments to the law firm were treated as high priority even as the bank deteriorated financially.

11

US $700,000 per month to the law firm even though the firm does not appear
to have engaged in substantial work.

These revelations, combined with contemporaneous reports that the
Defendant personally engaged in advocacy on behalf of Banco Master while the
contract remained in force, triggered widespread public concern about conflicts
of interest and institutional shielding. The controversy has resulted in
extraordinary judicial secrecy measures, including the sealing of the Banco
Master related proceedings at the STF and the rapid closure of preliminary
inquiries into the Defendant by the PGR.[11]

One of the factors that makes these developments relevant to service of
the Defendant is the U.S. nexus associated with Banco Master. Media in the
U.S. described Banco Master as having recently secured a lease with one of the
highest rents ever reported in Miami,[12] and Vorcaro's acquisition of a US $85.2
million Miami Beach property.[13] Those facts increase the likelihood that the

---

[11] *Editorial O Globo: STF Fracassa em transparência e prestação de contas,* BLOG GUSTAVO
NEGREIROS (Dec. 25, 2025), https://gustavonegreiros.com.br/index.php/2025/12/25/editorial-
o-globo-stf-fracassa-em-transparencia-e-prestacao-de-contas/153421?.

[12] *Banco Master Leases Office Space At 830 Brickell Plaza In Miami For $190 Per Square
Foot,* TRADED, https://traded.co/deals/florida/office/lease/830-brickell-plaza-9 (last visited
Dec. 30, 2025).

[13] Katherine Kallergis, *Arrested Brazilian Banker Revealed as Owner of $85M Bay Point
Estate in Miami,* THE REAL DEAL (Nov. 24, 2025),
https://therealdeal.com/miami/2025/11/24/brazilian-banker-daniel-vorcaro-true-owner-of-
miami-homes/?.

Defendant would have heightened incentives to avoid U.S. process and to resist voluntary appearance.

The Banco Master controversy is being handled under conditions of unusual opacity and institutional sensitivity at the highest levels. Accordingly, these developments reinforce Plaintiffs' showing that service through conventional mechanisms is impracticable within a reasonable time and that alternative means reasonably calculated to provide actual notice are warranted. The record shows that the Plaintiffs complied with every step required under the Hague Convention, the process is at a deliberate standstill, and the Defendant remains fully aware of this lawsuit. Under these circumstances, alternative service is not merely permissible but necessary.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990). Federal Rule of Civil Procedure 4(f) governs service of process on an individual in a foreign country, and provides for three alternative, and equally valid, methods of service. Fed. R. Civ. P. 4(f). Rule 4(f)(3) of the Federal Rules of Civil Procedure permits alternative forms of service on a foreign-based defendant that are "not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3). "The authorization for alternative service of

13

process under Rule 4(f)(3) is within the discretion of the district court," *SEC v. Martin*, 2019 WL 13474700, at *2 (M.D. Fla. Aug. 16, 2019), and Rule 4(f)(3) codifies the factors this court considers in determining whether the facts and circumstances warrant exercise of this discretion under Fed. R. Civ. P. 4(f). *TracFone Wireless, Inc. v. Hernandez*, 126 F. Supp. 3d 1357, 1364 (S.D. Fla. 2015).

Additionally, any authorized alternative means of service under Rule 4(f)(3) must satisfy due process. *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 2016 WL 7137699, at *2 (M.D. Fla. Nov. 29, 2016) (finding e-mail service permitted under Rule 4(f)(3) "so long as it comports with the requirements of due process"). "To meet the due process requirement, the method of service crafted by the district court must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (cleaned up).

Service pursuant to Rule 4(f)(3) "is neither a last resort nor extraordinary relief." *See Trapenard v. Clester*, 2023 WL 2264177, at *2 (M.D. Fla. Feb. 28, 2023) (cleaned up). All that is required is that the proposed service is not prohibited by international agreement and that such service comports with Constitutional due process, meaning that it is reasonably calculated to provide the defendant notice and an opportunity to defend. *Id.* at *1–2. Nevertheless—as demonstrated above—Plaintiffs have attempted to serve

Defendant through internationally agreed means of service, including under the Hague Convention pursuant to Rule 4(f)(1) prior to seeking leave for alternative service under Rule 4(f)(3).

## IV.  ARGUMENT

Service via email is proper under Rule 4(f)(3) because such service is not prohibited by international agreement, satisfies due process, and accords with well-established precedent authorizing email service on foreign defendants under similar circumstances. Plaintiffs have made diligent efforts to effect personal service, including initiating service through the Hague Convention. But those efforts have been thwarted by the PGR, the AGU, and the STJ. In light of these circumstances, and given that Defendant has repeatedly corresponded with Rumble's legal department via email and has expressly identified email as the preferred channel of communication, service by email is both reasonably calculated to apprise Defendant of this action and consistent with the principles of due process and Rule 4(f)(3).

### A.  Service Via Email Is Not Prohibited by International Agreement

Rule 4(f)(3) of the Federal Rules of Civil Procedure permits alternative forms of service on a foreign-based defendant that are "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). The Hague Convention governs international service because the United States and Brazil are both

signatories.[14] The Hague Convention leaves open alternative methods not expressly prohibited. *See* Hague Convention for the Service Abroad of Judicial and Extrajudicial Documents, No. 15, 1965, 20 U.S.T. 361, art. 1 (noting that the Hague Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad").

Brazil has objected to Article 10 of the Hague Convention, which addresses postal mail, not electronic communication. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters art. 10, Nov. 15, 1965, 20 U.S.T. 363, 658 U.N.T.S. 169. Courts have held that a signatory's objection to Article 10 of the Hague Convention does not preclude service via email under Rule 4(f)(3). *See, e.g.*, *SEC v. Martin*, 2019 WL 13474700, at *3 (M.D. Fla. Aug. 16, 2019) (granting motion for alternative service via email because China's objection to Article 10 of the Hague Convention is not an express rejection of service by email); *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, 2015 WL 5320947, at *3 (S.D. Fla. Sept. 14, 2025) ("This Court and many other federal courts have permitted service by electronic mail and determined that an objection to Article 10 of the Hague

---

[14]   Hague Conference on Private International Law, *Status Table,* https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (listing signatories to the Hague Service Convention).

Convention, i.e. an objection to service through 'postal channels' does not equate to an express objection to service via electronic mail."); *Richemont Int'l SA v. montblanchot.com*, 2020 WL 5763931, at *2 (S.D. Fla. Sept. 28, 2020) ("Where a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or website posting.").

Federal courts in other jurisdictions have similarly held that an objection to Article 10 does not preclude a court from authorizing email service under Rule 4(f)(3). *See, e.g.*, *ShelterZoom Corp. v. Goroshevsky*, 2020 WL 4252722, at *2 (S.D.N.Y. July 23, 2020) ("Numerous courts have held that service by email does not violate any international agreement, even when a country objects to Article 10 of the Hague Convention[.]" (cleaned up)); *Bazaraian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 17, (D.D.C. 2016) ("A country's objection to Article 10 does not constitute an express rejection of service by email.").

This includes cases that specifically involve foreign defendants located in Brazil. *See, e.g.*, *Louis Vuitton Malletier v. aaalvshop.com*, 2019 WL 7911372, at *1 (S.D. Fla. Aug. 13, 2019) ("Although [ ] Brazil . . . [is a] signator[y] to the Hague Convention on the Service Abroad of Extra-Judicial Documents in Civil and Commercial Matters . . . the Hague Convention does

not specifically preclude e-mail [service].”); *see also Amazon.com, Inc. v. Bamb Awns*, 2023 WL 2837076, at *2 (W.D. Wash. Apr. 7, 2023) (“[T]his Court and others have concluded that email service on individuals located in . . . Brazil is not prohibited by [the Hague Convention] or any other international agreement.”); *Equipav S.A. Pavimentação, Engenharia E Comercia LTDA. v. Bertin*, 2022 WL 2758417, at *3 (S.D.N.Y. July 14, 2022) (granting request to serve foreign defendant in Brazil via email because Article 10 of the Hague Convention does not address email and therefore does not prohibit such service); *Richemont Int'l SA*, 2020 WL 5763931, at *2 (same).

Because service by email is not among the means listed in Article 10, and Brazil has not objected to it, service by email is permissible here.

### B.    Serving Defendant Via Email Comports with the Requirements of Due Process

Serving the Defendant via email is consistent with due process, which requires a method “reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” *Signature Flight Support LLC. v. Cella*, 2025 WL 2443693, at *3 (M.D. Fla. Aug. 25, 2025) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Courts “routinely find that service by e-mail comports with due process when the e-mail is directed to an address that has been confirmed, such as an e-mail

address posted on a company's website." *Taser Int'l, Inc.*, 2016 WL 7137699, at

*2. Courts also look for "some basis to conclude that the proposed e-mail

address is, in fact, associated with the defendant in question." *Id.*

Here, both emails provided for serving the Defendant have been

confirmed as valid and operational, were used to attempt to communicate with

Rumble, and are undoubtedly associated with Defendant.

First, Defendant has used comunicacaosej@stf.jus.br to attempt to

communicate with Rumble as recently as July 11, 2025. Ex. 5. And in that

message, Defendant explicitly represented that email was one of the "official

channels" for receiving information in response. Ex. 5. That Defendant has

used this email address to attempt to communicate with Rumble and has

explicitly stated that it was the preferred method of communication—as

recently as a few months ago—shows that serving Defendant using this email

address is reasonably calculated to formally apprise him of the lawsuit. *See,*

*e.g.*, *Trapenard*, 2023 WL 2264177, at * 4 (finding that email service comports

with due process when plaintiff provided an email address for defendant, which

defendant used to communicate with plaintiff's counsel); *see also Rizik v.*

*Virnig*, 2025 WL 1489720, at *2 (D. Ariz. May 23, 2025) (authorizing

alternative service of process on defendant's business email when defendant

used this email for personal, non-business purposes).

19

Moreover, the Defendant's other email address, gabmoraes@stf.jus.br, is posted on the STF's official website as another one of his email addresses. Ex. 6. That the Defendant has published his e-mail address in the contact details section on the STF's official website communicates his desire to be contacted at that address. *See Taser Int'l, Inc.*, 2016 WL 7137699, at *2 (finding that email service was reasonably calculated to apprise defendant of the litigation when defendant's email address was listed in the contact details on the company's website); *Alu, Inc. v. Kupo Co., Inc.*, 2007 WL 177836, at *4 (M.D. Fla. Jan. 19, 2007) (authorizing service via email because the email address was designated on the defendant company's website).

Accordingly, service to these e-mail addresses is reasonably calculated to apprise Defendant of this litigation and to allow him to present his objections, thereby comporting with the requirements of due process.

## C.    Alternative Service Is Necessary to Avoid Indefinite Delay

As mentioned above, the BCA was unable to provide an estimate as to approximately how long it would take to serve the Defendant under the Hague Convention. Ex. 8 (Email Correspondence Between Counsel and Brazil's Central Authority), Sept. 15, 2025 Email. Nor could it provide any assurances that the Defendant would be served at all. This protracted timeline is a consideration that weighs in favor of alternative service. *See, e.g.*, *Bertin*, 2022 WL 2758417, at *5 (granting motion for alternative service after finding that

service under the Hague Convention would result in undue delay because "the Brazilian authority responsible for effecting service has informed Equipav that the average time for completing service is seven to twelve months").

Here, the process has not merely slowed—it has been obstructed. The PGR's and AGU's sealed recommendations to refuse service in defense of national sovereignty and to maintain the service proceedings under seal leave no realistic prospect that the request will move forward. And the PGR's or any other foreign authority's challenge to the propriety or content of Plaintiffs' Hague application will inevitably result in protracted proceedings within Brazil—litigation that could extend for years—before even the threshold issue of service is resolved. Such delay would frustrate the fundamental objective of expeditious adjudication and unduly prejudice Plaintiffs' rights to pursue relief. Courts routinely grant alternative service when the treaty proves unduly long or futile. *In re Mercedes-Benz Emissions Litig.*, 2019 WL 2913309, at *3 (D.N.J. July 2, 2019) ("[W]here Convention service is impossible or impractical, or where Convention service is attempted but unsuccessful despite a plaintiff's good faith efforts to effect service, courts will allow alternative service pursuant to Rule 4(f)(3)."). Further delay would serve no purpose but to let Defendant's obstruction succeed. Rule 4(f) provides the Court the authority to ensure that litigation can proceed.

21

## V.    CONCLUSION

Plaintiffs respectfully request an order authorizing service pursuant to Federal Rule of Civil Procedure 4(f)(3) by email to the Defendant at comunicacaosej@stf.jus.br and gabmoraes@stf.jus.br and directing that service be deemed complete upon transmission of a service packet containing the summons, operative complaint, and all attachments.

For the reasons stated above, Plaintiffs request that the Court grant Plaintiffs' Motion for Alternative Service.


Dated: February 2, 2026            Respectfully submitted,

                /s/ *E. Martin De Luca*
                E. MARTIN DE LUCA*
                BOIES SCHILLER FLEXNER LLP
                55 Hudson Yards
                New York, New York 10001
                (212) 446-2300

                *Lead Counsel for Plaintiff*
                *Rumble Inc.*

                MATTHEW L. SCHWARTZ*
                BOIES SCHILLER FLEXNER LLP
                55 Hudson Yards
                New York, New York 10001
                (212) 303-3646

                ANDREW H. SMITH*
                BOIES SCHILLER FLEXNER LLP
                1401 New York Ave. NW
                Washington, DC 20005
                (202) 274-1163

DARIA PUSTILNIK
FLA. BAR NO. 92514
BOIES SCHILLER FLEXNER LLP
100 S.E. 2nd Street, Suite 2800
Miami, Florida 33131
(305) 539-8400

*Counsel for Plaintiff Rumble Inc.*

/s/ *Caryn G. Schechtman*
CARYN G. SCHECHTMAN*
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Lead Counsel for Plaintiff
Trump Media & Technology
Group Corp.*

CHRISTOPHER G. OPRISON
DLA PIPER LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
(305) 423-8500

*Counsel for Plaintiff
Trump Media & Technology
Group Corp.*

*Admitted *pro hac vice*

## **<u>CERTIFICATION</u>**

Defendant has not yet been served or otherwise appeared by counsel or pro se in this action. Upon any appearance by Defendant, the undersigned will confer with Defendant or Defendant's counsel and advise as to Defendant's position on this Motion.

Respectfully submitted this 2nd day of February 2026.

/s/ *E. Martin De Luca*
_____
E. MARTIN DE LUCA

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of February 2026, I
electronically filed the foregoing with the Clerk of the Court by using the
CM/ECF system which will send a notice of electronic filing to all CM/ECF
participants.

/s/ *E. Martin De Luca*
_____
E. MARTIN DE LUCA