UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUMBLE INC. and TRUMP MEDIA
& TECHNOLOGY GROUP CORP.,

     Plaintiffs,

v.                                 Case No: 8:25-cv-411-MSS-AAS

ALEXANDRE DE MORAES, Justice
of the Supreme Federal Tribunal of the
Federative Republic of Brazil,

     Defendant.

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiffs' Motion for Alternate Service, (Dkt. 55), and Plaintiff Rumble Inc.'s Motion to Seal. (Dkt. 56) Plaintiffs request permission to serve Defendant Alexandre de Moraes, Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil, by email. Upon consideration, the Court **GRANTS** Plaintiffs' Motions.

### I.    BACKGROUND

In April 2025, Plaintiffs Rumble Inc. ("Rumble") and Trump Media & Technology Group Corp. ("TMTG") initiated this action against Defendant Alexandre de Moraes, Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil ("Justice Moraes"). (Dkt. 1) TMTG operates the Truth Social

platform, "a forum designed to facilitate open discourse and uphold the American tradition of free expression for its users." (Dkt. 38 at ¶ 6) Truth Social uses Rumble's "cloud-based hosting and streaming infrastructure to deliver multimedia content to its users." (Id. at ¶ 7) According to Plaintiffs' Amended Complaint, (Dkt. 38), Justice Moraes issued sweeping gag orders to suspend multiple U.S.-based accounts of a well-known politically outspoken user. (Id. at ¶ 2) The gag orders also require Rumble to designate a legal representative in Brazil for the purpose of accepting service of the gag orders. (Id. at ¶ 3) Thus, Plaintiffs initiated this case to seek a declaration that the gag orders are unenforceable in the United States because (1) they would violate the First Amendment; (2) enforcement of the orders would violate the Communications Decency Act; (3)  they are against public policy; (4) they would require Rumble to violate the Stored Communications Act; and (5) they violate Florida's statutory foreign judgment nonrecognition policy. Plaintiffs also bring claims for tortious interference with contractual and prospective business relations. (Dkt. 38)

Since initiating this action, Plaintiffs have spent several months pursuing formal service under the Hague Service Convention. Plaintiffs now represent that the Brazilian service process has become "politicized and effectively unavailable." (Dkt. 55 at 3) Namely, rather than approving Plaintiffs' request for service of process and submitting it for execution to a federal judge, Brazil's Superior Tribunal of Justice ("STJ") departed from standard practice and solicited the views of the Brazilian Prosecutor General's Office ("PGR") and the Office of the Attorney General of the Union. Plaintiffs represent that this intervention has brought the process to a standstill,

2

with no timetable and no assurance that service will ever be completed. Plaintiffs also represent that the PGR submitted a sealed recommendation urging that service be blocked altogether. After this recommendation, the STJ ordered the proceeding to be placed under seal. With no estimate of the timeline for service to be accomplished through these channels, Plaintiffs moved for leave to serve Defendant by email. (Dkt. 55) Plaintiffs also moved to file certain exhibits to their motion under seal. (Dkt. 56) After Plaintiffs filed the motions, a Brazilian news article reported that the STJ declined to effect service pursuant to the Hague Convention. (Dkts. 57, 58) For the following reasons, the motions are **GRANTED**.

## II.    MOTION FOR ALTERNATE SERVICE

Pursuant to Federal Rule of Civil Procedure 4(f)(1), an individual in a foreign country may be served by "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial documents." Fed. R. Civ. P. 4(f)(1). Under Rule 4(f)(3), however, a district court may also direct service on an individual in a foreign country by "other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3); see also Chanel, Inc. v. Liu Zhixian, No. 10-cv-60585, 2010 WL 1740695, at *2 (S.D. Fla. Apr. 29, 2010). Thus, service under Rule 4(f)(3) is appropriate when alternative service is not prohibited by international agreement and is directed by the court. See id. If an international agreement does not preclude the means of service, "[a] court acting under Rule 4(f)(3) ... remains free to order alternative means of service where a signatory nation has not

3

expressly objected to those means." <u>Louis Vuitton Malletier, S.A. v. louis-vuittononlines.org</u>, No. 17-cv-61033, 2017 WL 10741870, at *1 (S.D. Fla. May 31, 2017) (citation omitted).

"[T]he decision to issue an order allowing service by alternate means lies solely within the discretion of the district court." <u>Chanel, Inc. v. Huan Sheng Lin</u>, No. 08-cv-23490, 2009 WL 1034627, at *1 (S.D. Fla. Apr. 16, 2009) (citing <u>Prewitt Enters., Inc. v. OPEC</u>, 353 F.3d 916, 921 (11th Cir. 2003)); <u>see also</u> <u>Rio Props., Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1018 (9th Cir. 2002) ("[W]e leave it to the discretion of the district court to balance the limitations of email service against its benefits in any particular case."). To that end, the methods of service under Rule 4(f) are "independent of each other, and a party need to first attempt service under subsections (1) or (2) before attempting service by alternative means under subsection (3)." <u>Taser Int'l, Inc. v. Phazzer Elecs., Inc.</u>, No. 6:16-cv-366, 2016 WL 7137699, at *2 (M.D. Fla. Nov. 29, 2016). In other words, Rule 4 does not require a plaintiff to exhaust diplomatic channels before seeking alternative service. <u>See, e.g.</u>, <u>CFTC v. Fingerhut</u>, No. 20-cv-21887, 2020 WL 3977147, at *2 (S.D. Fla. July 13, 2020). Nonetheless, courts have found alternative service to be particularly warranted where "attempted Hague Convention service remains unsuccessful after prolonged and diligent efforts by Plaintiffs, and failure to permit alternate service will result in unduly long delays in litigation." <u>In re Zantac (Ranitidine) Prods. Liab. Litg.</u>, MDL No. 2924, 2021 WL 1989928, *2 (S.D. Fla. Apr. 1, 2021).

4

Ultimately, alternative methods of service must fulfill due process requirements. Huan Sheng Lin, 2009 WL 1034627, at *2. Constitutional due process requires only that service of process provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (citations omitted).

The Hague Convention is applicable in the present matter because Brazil is a signatory to the Convention.[1] As an initial matter, the Hague Convention does not explicitly prohibit service via email. See Astrove v. Doe, No. 22-cv-80614-RAR, 2022 WL 4594180, at *1 (S.D. Fla. May 31, 2022) ("[T]he Hague Convention does not specifically preclude service of process via e-mail."). "Where a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or website posting." Toho Co. v. Individuals, Corps., LLCs, P'ships & Uninc. Ass'ns Identified in Schedule "A" Hereto, No. 25-cv-23049, 2025 WL 3557849, at *1 (S.D. Fla. July 30, 2025). Thus, Brazil's objection to Article 10 of the Hague Convention does not preclude service by email. See Stat Med. Devices, Inc. v. HTL-Strefa, Inc., No. 15-cv-20590, 2015 WL 5320947, at *3 (S.D. Fla. June 4, 2020) ("This Court and many other federal courts have permitted service by electronic mail and determined that an objection to Article 10 of the Hague

---

[1] Hague Conference on Private International Law, *Brazil accedes to the Service Convention*, https://www.hcch.net/en/news-archive/details/?varevent=650 (last visited May 20, 2026).

Convention, i.e., an objection to service through 'postal channels' does not equate to an express objection to service via electronic mail.").

Accordingly, service by email on a Brazilian defendant qualifies as "other means not prohibited by international agreement" under Rule 4(f)(3). Indeed, several courts in the Eleventh Circuit have allowed email service on Brazilian defendants. See, e.g., U.S. Secs. & Exch. Comm'n v. MCC Int'l Corp., No. 2:22-cv-14129-KMM, 2023 WL 5659064, *4 (S.D. Fla. Mar. 8, 2023) (allowing email service on a Brazilian defendant while also stating that courts nationwide have approved of serving Brazilian defendants by email); Fed'n of the Swiss Watch Indus. FH v. Bestintimes.me, No. 22-CV-62000-RAR, 2022 WL 17987245, *2 (S.D. Fla. Nov. 3, 2022) (Brazil has not expressly objected to email service under the Hague Convention, so email service is permitted under Rule 4(f)(3)); Richemont Int'l SA v. montblanchot.com, No. 20-cv-61941, 2020 WL 5763931, *2 (S.D. Fla. Sept. 28, 2020) (same); Louis Vuitton Malletier v. aaalvshop.com, No. 19-CIV-61986-RAR, 2019 WL 7911372, at *1 (S.D. Fla. Aug. 13, 2019) (same).

Here, considering Plaintiffs' attempts at Hague service have been thwarted, the Court finds failure to permit alternative service will result in unduly long delays in litigation. Accordingly, the Court finds that alternative service is warranted in this case.

Finally, the Court concludes that email service comports with due process requirements in this case. As set forth above, constitutional due process requires only that service of process provide "notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Mullane</u>, 339 U.S. at 314. Here, Plaintiffs represent that both emails provided for serving Defendant have been confirmed as valid and operational and were used by Defendant to attempt to communicate with Plaintiffs. In particular, Plaintiffs assert that Defendant used the email address comunicacaosej@stf.jus.br to attempt to communicate with Rumble on July 11, 2025. (Dkt. 56-5) <u>See</u> <u>Trapenard v. Clester</u>, No. 6:22-cv-660-RBD-LHP, 2023 WL 2264177, at *4 (M.D. Fla. Feb. 28, 2023) (finding that email service comported with due process where defendant had used that email address to communicate with plaintiff). Plaintiffs assert that the other email address, gabmoraes@stf.jus.br, is posted on the Supreme Federal Tribunal's website as another one of Defendant's email addresses. <u>See</u> <u>Taser Int'l</u>, 2016 WL 7137699, at *2 ("Courts routinely find that service by e-mail comports with due process when the e-mail is directed to an address that has been confirmed, such as an e-mail posed on a company's website.").

For these reasons, Plaintiffs' Motion for Alternate Service, (Dkt. 55), is **GRANTED**.

### III.    MOTION TO SEAL

Plaintiff Rumble next requests that the Court seal Exhibit 1–5 of its Motion to Seal, (Dkts. 56-1, 56-2, 56-3, 56-4, 56-5), which consist of gag orders issued under seal by Justice Moraes. While Rumble "does not believe there is any legitimate basis for a secret court to issue censorship orders shielded from public scrutiny," it requests to file the orders under seal out of deference to the Brazilian legal system. (Dkt. 56 at 2)

The Court notes that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978). "[T]he starting point in considering a motion to seal court records is a 'strong presumption in favor of public access to judicial proceedings.'" EEOC v. Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citation omitted). As a result, good cause is required to seal any portion of the court's record. Farnsworth v. Procter & Gamble, Co., 758 F.2d 1545, 1547 (11th Cir. 1985).

The movant bears the burden of proving that such cause exists. Under Local Rule 1.11(b), absent authorization by statute, rule, or order, a Court may seal an item if (1) the party files a motion in support of the seal, (2) the motion describes the item proposed for sealing, (3) the motion states the reason why filing the item is necessary, sealing the item is necessary, and partial sealing, redaction, or means other than sealing are unavailable or unsatisfactory, (4) the motion includes a legal memorandum supporting the seal, and (5) the motion sets forth a proposed duration of the seal. The motion must also state the name and contact information of the person authorized to retrieve a sealed, tangible item, and must certify the name and contact information of any non-party the movant knows or reasonably should know has an interest in establishing or maintaining the seal and the day on which the movant delivered the motion to the non-party. Finally, the motion must include the item requested to be sealed.

Rumble's Motion satisfies the requirements of the Local Rule. Based on the information contained therein, Rumble has met its burden of showing that good cause exists to seal the exhibits found at Dkts. 56-1 through 56-5. The seal shall remain in effect pending further order of the Court.

## IV.   CONCLUSION

Accordingly, it is hereby **ORDERED**:

1. Plaintiffs' Motion for Alternate Service, (Dkt. 55), is **GRANTED**.

2. Within **thirty (30) days** of the date of this Order, Plaintiffs shall complete service of process on Defendant via email at comunicacaosej@stf.jus.br and gabmoraes@stf.jus.br. By this same deadline, Plaintiffs shall file proof of service with the Court.

3. If Defendant fails to timely respond to the Amended Complaint or request an extension of time to do so, Plaintiffs shall promptly move for the entry of Clerk's default.

4. Plaintiff Rumble Inc.'s Motion to Seal, (Dkt. 56), is **GRANTED**.

5. The Clerk is directed to **SEAL** Dkts. 56-1 through 56-5, attached to the Motion to Seal. (Dkt. 56) These documents **SHALL REMAIN SEALED** pending further Court order.

6. Any Party seeking to unseal these records must file a motion and demonstrate good cause.

**DONE** and **ORDERED** in Tampa, Florida, this 22nd day of May 2026.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person