**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| RUMBLE INC. and TRUMP MEDIA & TECHNOLOGY GROUP CORP.<br><br>        Plaintiffs,<br><br>   v.<br><br>ALEXANDRE DE MORAES, Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil<br><br>        Defendant. | Civil Action No.<br>8:25-cv-00411-MSS-AAS |

**THE FEDERATIVE REPUBLIC OF BRAZIL'S MOTION TO INTERVENE AND TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT .......................................................................................................4

    I.      Brazil Must Be Permitted to Intervene. ..............................................4

         A.     Brazil Has an Interest in the Litigation.......................................4

         B.     Brazil's Interests Will Be Impaired if It Cannot Participate in the Litigation and It Is Not Adequately Represented by the Existing Parties. ................................................................................8

    II.     This Action Must be Dismissed. .........................................................9

         A.     Brazil Is the Real Party in Interest and Is Immune under the FSIA. .......................................................................................10

         B.     Brazil Is an Immune Required Party under Rule 19..................12

         C.     Justice Moraes Is Entitled to Foreign Official Immunity...........15

         D.     The Act of State Doctrine Requires Dismissal. ........................18

         E.     International Comity Requires Dismissal. ...............................21

         F.     The Court Lacks Personal Jurisdiction...................................22

CONCLUSION ..................................................................................................23

LOCAL RULE 3.01(g) CERTIFICATION ........................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aerosonic LLC v. Joby Aero, Inc.*,
No. 8:25-cv-554,
2026 U.S. Dist. LEXIS 41656 (M.D. Fla. Feb. 26, 2026) ..................................8

*Aljabri v. Al Saud*,
106 F.4th 1157 (D.C. Cir. 2024) ....................................................................16

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964) ..............................................................................18, 19, 20

*Belhas v. Ya'Alon*,
515 F.3d 1279 (D.C. Cir. 2008) .........................................................................7

*Bi v. Union Carbide Chems. & Plastics Co.*,
984 F.2d 582 (2d Cir.1993) ..............................................................................21

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
581 U.S. 170 (2017) ....................................................................................... 8, 12

*Burke v. Ocwen Fin. Corp.*,
833 F. App'x 288 (11th Cir. 2020) ....................................................................4

*Butler v. Sukhoi Co.*,
579 F.3d 1307 (11th Cir. 2009) ................................................................. 11, 12

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*,
386 U.S. 129 (1967) ...........................................................................................8

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) ..................................................................... 4, 9

*Chisholm & Co. v. Bank of Jamaica*,
643 F. Supp. 1393 (S.D. Fla. 1986) ............................................................. 18, 19

*City Nat'l Bank of Fla. v. La. Apple, LLC*,
No. 24-cv-23285,
2024 U.S. Dist. LEXIS 167180 (S.D. Fla. Sept. 17, 2024) ...............................14

*Comparelli v. Republica Bolivariana De Venez.*,
891 F.3d 1311 (11th Cir. 2018)..........................................................................11

*Comparelli v. Bolivarian Republic of Venez.*,
No. 14-24414-CIV-WILLIAMS/MCALILEY,
2021 U.S. Dist. LEXIS 152554 (S.D. Fla. Aug. 13, 2021)............................*passim*

*Dvoinik v. Philipp*,
No. 23-12240, 2024 U.S. App. LEXIS 583 (11th Cir. Jan. 9, 2024)....................20

*Edwards v. Fed. Gov't of Nig.*,
No. 18-11133-FDS,
2018 U.S. Dist. LEXIS 212827 (D. Mass. Dec. 18, 2018) ................................10

*Edwards v. Fed. Republic of Nigeria*,
No. 23-1129 (CKK),
2026 U.S. Dist. LEXIS 51391 (D.D.C. Mar. 12, 2026) ....................................10

*In re Elena Shchegoleva Discovery Application*,
No. 25-CV-23858-MOORE/Elfenbein,
2026 U.S. Dist. LEXIS 5153 (S.D. Fla. Jan. 9, 2026) .........................................4

*Ezemarval, LLC v. El Inst. Postal Dominicano*,
No. 22-21822-CIV-MARTINEZ,
2024 U.S. Dist. LEXIS 79472 (S.D. Fla. Mar. 28, 2024)..................................12

*Fagan v. Cent. Bank of Cyprus*,
No. 9:19-CV-80239,
2020 U.S. Dist. LEXIS 106343 (S.D. Fla. June 17, 2020) ................................16

*Fla. Wildlife Fed'n Inc. v. United States Army Corps of Eng'rs*,
859 F.3d 1306 (11th Cir. 2017)................................................................. 8, 13, 15

*Fox v. Tyson Foods, Inc.*,
519 F.3d 1298 (11th Cir. 2008) ........................................................................4

*Georgia v. U.S. Army Corps of Engineers*,
302 F.3d 1242 (11th Cir. 2002).........................................................................8

*Giraldo v. Drummond Co.*,
808 F. Supp. 2d 247 (D.D.C. 2011)............................................................ 17, 22

*Glen v. Club Mediterranee, S.A.*,
450 F.3d 1251 (11th Cir. 2006)................................................................... 18, 19

iii

*GMI, LLC v. Asociación del Fútbol Argentino,*
  No. 13-21494-CIV-ALTONAGA,
  2014 U.S. Dist. LEXIS 85023 (S.D. Fla. June 23, 2014) ...................................13

*Hansberry* v. *Lee*, 311 U.S. 32, 40 (1940) ...................................................................15

*Hemispherx Biopharma v. Johannesburg Consol. Invs.*,
  553 F.3d 1351 (11th Cir. 2008)...............................................................................2

*Hensley v. Hartford Cas. Ins. Co.*,
  113 F.4th 1327 (11th Cir. 2024) ...........................................................................14

*Huff v. Commissioner*,
  743 F.3d 790 (11th Cir. 2014) ...............................................................................7

*Hussein v. Maait*,
  129 F.4th 99 (2d Cir. 2025) ...........................................................................*passim*

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ...............................................................................................6

*Laster v. City of Albany*,
  517 F. App'x 777 (11th Cir. 2013).................................................................. 22, 23

*Lewis v. Mutond*, 918 F.3d 142, 146 (D.C. Cir. 2019) ...............................................16

*Li v. Li*,
  No. 20-2008, 2023 U.S. Dist. LEXIS 60329 (D.D.C. Apr. 5, 2023).......... 6, 17, 18

*Malewicz v. City of Amsterdam*,
  517 F. Supp. 2d 322 (D.D.C. 2007)......................................................................19

*Maps v. Miami Dade State Atty.*,
  693 F. App'x 784 (11th Cir. 2017).........................................................................22

*In re Maxwell Communication Corp.*, 93 F.3d 1036 (2d Cir. 1996) ............................21

*Marron v. Moros*,
  No. 21-23190-CIV-MORE,
  2023 U.S. Dist. LEXIS 175813 (S.D. Fla. Sept. 29, 2023)..................................16

*Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*,
  471 F.3d 377 (2d Cir. 2006) .......................................................................... 13, 14

iv

*Mezerhane v. República Bolivariana De Venez.*,
785 F.3d 545 (11th Cir. 2015) ...................................................................18

*Moriah v. Bank of China, Ltd.*,
107 F. Supp. 3d 272 (S.D.N.Y. 2015)..........................................................18

*Nagy v. Naday*,
No. 17-10613-LTS,
2019 U.S. Dist. LEXIS 225127 (D. Mass. June 28, 2019) ...............................1, 5

*Nationwide Prop. & Cas. Ins. Co. v. Wash. Mut. Bank, F.A.*,
No. 3:10-CV-1,
2010 U.S. Dist. LEXIS 101130 (N.D.W.Va. Sept. 8, 2010) ............................23

*Nnaka v. Fed. Republic of Nig.*,
238 F. Supp. 3d 17 (D.D.C. 2017)................................................................5, 10

*Odhiambo v. Republic of Kenya*,
930 F. Supp. 2d 17 (D.D.C. 2013)...............................................................5, 10

*Philippines v. Pimentel*,
553 U.S. 851 (2008) .........................................................................*passim*

*Preble-Rish Haiti, S.A. v. Republic of Haiti*,
No. 21-cv-9040 (PKC),
2022 U.S. Dist. LEXIS 133673 (S.D.N.Y. July 27, 2022) ..................................9

*Purcell v. BankAtlantic Fin. Corp.*,
85 F.3d 1508 (11th Cir. 1996) ......................................................................4

*Richards v. Jefferson Cty.*,
517 U.S. 793 (1996) ...................................................................................15

*Riggs Nat'l Corp. & Subsidiaries v. Comm'r of IRS*,
163 F.3d 1363 (D.C. Cir. 1999) ..................................................................19

*Rosasen v. Norway*,
No. 22-55980,
2024 U.S. App. LEXIS 8987 (9th Cir. Apr. 15, 2024) ......................................11

*S & Davis Int'l, Inc. v. Yemen*,
218 F.3d 1292 (11th Cir. 2000).....................................................................23

*Samantar v. Yousuf*,
560 U.S. 305 (2010) .................................................................................4, 10

v

*Saudi Arabia v. Nelson*,
507 U.S. 349 (1993) ....................................................................................... 8, 10

*Sequeira v. Republic of Nicaragua*,
No. 16-25052-CIV-MARTINEZ/GOODMAN,
2017 U.S. Dist. LEXIS 121670 (S.D. Fla. Aug. 1, 2017) .................................. 10

*Sloan v. McGrady*,
No. 6:11-cv-2000-Orl-19GJK,
2012 U.S. Dist. LEXIS 14248 (M.D. Fla. Jan. 30, 2012) ................................. 22

*Societe Nationale Industrielle Aerospatiale v.*
*United States Dist. Court for S. Dist.*,
482 U.S. 522 (1987) .......................................................................................... 21

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.*,
632 F.3d 938 (5th Cir. 2011) ........................................................................... 19

*Telchi v. Isr. Military Indus.*,
739 F. App'x 514 (11th Cir. 2017) .............................................................. 10, 11

*In re Terrorist Attacks on September 11, 2001*,
538 F.3d 71 (2d Cir. 2008) ............................................................................... 11

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ............................................................................................ 9

*Ungaro-Benages v. Dresdner Bank AG*,
379 F.3d 1227 (11th Cir. 2004) ........................................................................ 21

*In re Wash.*,
No. 25-10482,
2025 U.S. App. LEXIS 8605 (11th Cir. Apr. 10, 2025) ...................................... 4

*Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486 (S.D.N.Y. 2014) ........................... 16

*Yousuf v. Samantar*,
699 F.3d 763 (4th Cir. 2012) ...................................................................... 16, 17

*Zhan v. World Bank*,
No. 19-cv-1973 (DLF),
2019 U.S. Dist. LEXIS 201172 (D.D.C. Nov. 20, 2019) ..................................... 1

**Statutes**

28 U.S.C. §§ 1602 *et seq.* ................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12 ..............................................................................................1

Fed. R. Civ. P. 19 ...................................................................................... *passim*

Fed. R. Civ. P. 24 ....................................................................................... 1,4, 7

Restatement (Second) of Foreign Relations Law § 66 ............................................ 16

## INTRODUCTION

The Federative Republic of Brazil ("Brazil"), a foreign sovereign State, hereby moves pursuant to Federal Rules of Civil Procedure 24 and 12(b), respectively, for an order permitting it to intervene as of right and to dismiss the amended complaint, including its supplemental pleading ("Amended Complaint"), of Plaintiffs Rumble Inc. ("Rumble") and Trump Media & Technology Group Corp. ("Trump Media").

This lawsuit is extraordinary. Plaintiffs seek to use this United States District Court as a forum for suing Justice Alexandre de Moraes, a Justice of Brazil's Supreme Federal Court—the country's highest court—because of orders he entered in exercise of his judicial authority under Brazilian law. Such a lawsuit is nearly unprecedented. As far as Brazil is aware, a gambit of this sort has only been attempted once, by a *pro se* litigant whose case was swiftly and rightly dismissed. *See Nagy v. Naday*, No. 17-10613-LTS, 2019 U.S. Dist. LEXIS 225127, at *6 (D. Mass. June 28, 2019) (dismissing case against Hungarian judges challenging child custody orders because they were "actions of the Hungarian state" and Hungary was immune).

Plaintiffs' action should suffer the same fate. Brazil is the real party in interest. It therefore has the right to intervene and obtain the case's dismissal for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq*. That outcome is required because Plaintiffs do not invoke, let alone satisfy, any of the exceptions to immunity set out in that statute, the applicability of which is an absolute requirement for subject matter jurisdiction. Nor could they. Nothing in the Amended Complaint satisfies the FSIA's immunity exceptions.

1

Even if Brazil were not the real party in interest (it is), Brazil would still have the right to intervene because it has an undeniable sovereign interest in a suit against a judge of its highest court for orders he issued in performance of his judicial duties. And the action would still need to be dismissed, both because Brazil is an indispensable party that cannot be joined under Fed. R. Civ. P. 19, and additionally, because Justice Moraes is entitled to common law foreign official immunity. Further, dismissal is required because the action is barred by the act of state doctrine, contravenes international comity, and the Court lacks personal jurisdiction.

## BACKGROUND

Justice Moraes is a Justice of Brazil's Supreme Federal Court, the highest court in the Brazilian Judiciary. Brazilian law empowers the President of the Supreme Federal Court to conduct inquiries and issue orders in connection with those inquiries. The President may delegate those powers to other Justices. *See* Internal Rules of the Supreme Federal Court, art. 43, Declaration of Nicholas M. Renzler, Ex. A.

On March 14, 2019, the President of the Supreme Federal Court appointed Justice Moraes to carry out such an inquiry. Office of the Chief Justice Ordinance No. 69, Renzler Decl., Ex. B. On February 9, 2025, Justice Moraes, exercising his designated powers, issued an order requiring Rumble, a video platform provider, to suspend a user's account. Order of the Supreme Federal Court, Mar. 17, 2025, at 4, 10, Renzler Decl., Ex. C. The following day, in accordance with Article 1,138 of the Brazilian Civil Code, Justice Moraes ordered Rumble to appoint a legal representative

2

in Brazil to receive service.  *Id*.[1]  Justice Moraes also ordered Rumble's legal representative to demonstrate the company's compliance with Brazilian law and his prior order.  *Id*. at 4.

On February 19, 2025, Justice Moraes ordered that Rumble demonstrate that it had complied, under penalty of immediate suspension of the company's activities in Brazilian territory.  *Id*. at 5.  When Rumble failed to do so, on February 21, 2025, Justice Moraes ordered Rumble's suspension in Brazil, imposed fines, and directed the Brazilian telecommunications regulator to suspend access to Rumble in Brazil until it had done so.  *Id*. at 5-6.

On March 17, 2025, a panel of five Justices of the Supreme Federal Court (including Justice Moraes) unanimously affirmed his actions, including the February 21, 2025 order requiring suspension of Rumble's operations in Brazil "until all the court orders … are complied with."  *Id*. at 30.[2]

Rather than comply with the Supreme Federal Court's orders or pursue legal remedies in Brazil, Rumble, along with Trump Media, filed the present action in this Court against Justice Moraes, suing him for declaratory and injunctive relief and monetary damages.  *See* ECF No. 1; ECF No. 39; ECF No. 46.  For the reasons explained below, the action must be dismissed.

---

[1] Article 1,138 of Brazil's Civil Code requires foreign companies authorized to operate in Brazil to "permanently maintain a representative in Brazil" with, *inter alia*, "the power[] … to receive service of process [for claims] on behalf of the company."  Renzler Decl., Ex. D.

[2] On July 11, 2025, Justice Moraes allegedly ordered Rumble to block another user's account within Brazilian territory, preserve its contents, and disclose associated user data.  ECF No. 46 ¶¶ 4-5.

## ARGUMENT

### I.    Brazil Must Be Permitted to Intervene.

Brazil has a right to intervene because it has an interest relating to the subject of the action that will be impaired without its participation and Brazil is inadequately represented by the existing parties.  *See* Fed. R. Civ. P. 24(a)(2); *In re Wash.*, No. 25-10482, 2025 U.S. App. LEXIS 8605, at *3 (11th Cir. Apr. 10, 2025) (citing *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302-03 (11th Cir. 2008)).

#### A.    Brazil Has an Interest in the Litigation.

"Under Eleventh Circuit precedent, intervention of right requires a 'direct, substantial, legally protectable' interest," which is satisfied where "the intervenor is a real party in interest in the transaction or subject matter at issue."  *In re Elena Shchegoleva Discovery Application*, No. 25-CV-23858-MOORE/Elfenbein, 2026 U.S. Dist. LEXIS 5153, at *11-12 (S.D. Fla. Jan. 9, 2026) (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).  *See also Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 292 (11th Cir. 2020) ("To have a necessary interest, the putative intervenor 'must be at least a real party in interest in the transaction which is the subject of the proceeding.'") (quoting *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996)).

Brazil is plainly the real party in interest.  The Supreme Court has recognized that a claim against a foreign government official in their official capacity "should be treated as [an] action[] against the foreign state itself, as the state is the real party in interest." *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010).  Thus, where a lawsuit against

4

a foreign official complains of acts committed by the official acting in their official capacity, the foreign State is the real party in interest.  For instance, in *Hussein v. Maait*, the Second Circuit found that Egypt was the real party in interest in a suit against its Minister of Finance because the claims "center[ed] on decisions attributed to the government and various governmental agencies."  129 F.4th 99, 117 (2d Cir. 2025).  *See also, e.g.*, *Nnaka v. Fed. Republic of Nig.*, 238 F. Supp. 3d 17, 30 (D.D.C. 2017) (finding Nigeria to be the real party in interest in suit against its Attorney General); *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34 (D.D.C. 2013) (finding Kenya to be the real party in interest in suit against Commissioners of the Kenya Revenue Authority).

This rule applies to claims against judges.  *Nagy v. Naday* is directly on-point.  The plaintiff sued Hungarian judges for judicial acts taken in relation to a child custody dispute.  *Nagy*, 2019 U.S. Dist. LEXIS 225127, at *4.  The District of Massachusetts held that Hungary was the real party in interest as the plaintiff could not "explain how … defendants' alleged [wrongful] acts occurred outside of their official duties as judges," despite plaintiff's attempts to cast the acts as unlawful.  *Id.* at *6.

The Amended Complaint concerns acts of the Brazilian judiciary: orders by Justice Moraes exercising his judicial powers.  ECF No. 38 ¶¶ 109-163; ECF No. 46 ¶¶ 15-20.  Further, the suit is brought against Justice Moraes in his official capacity.  Plaintiffs state: "[a]s a Justice of the STF, Justice Moraes is an official of the Brazilian government," ECF No. 38 at ¶ 12, referring to him as "Justice Moraes," *e.g.*, *id.* ¶¶ 10-12, 14, 24-34, 36-40; ECF No. 46 ¶¶ 3-8, 18.  Where an "official is discussed solely in

5

his capacity as" a government official, the sovereign "is the real party in interest." *Li v. Li*, No. 20-2008, 2023 U.S. Dist. LEXIS 60329, at *10 (D.D.C. Apr. 5, 2023).

Plaintiffs' identification of Justice Moraes in the Amended Complaint's caption as a "Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil," ECF No. 38 at 1,[3] confirms this is an official capacity lawsuit. *Hussein*, 129 F.4th at 114 ("In some cases, the plaintiff's complaint will say in the caption in what capacity the foreign official is sued."). Further, Plaintiffs seek money damages. ECF No. 38 at 60. "In a suit for damages against a government official in his official capacity, the government entity is generally understood to be the 'real party in interest.'" *Hussein*, 129 F.4th at 113 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). They also seek injunctive relief that would require this Court to issue an order restraining the actions of the Supreme Federal Court, *see* ECF No. 38 at 59-60; ECF No. 46 at 7, underscoring the sovereign nature of the challenged conduct.

Plaintiffs try to avoid Brazil being the real party in interest by contending that the orders were *ultra vires*. ECF No. 38 ¶ 14. That is risible. Justice Moraes issued those orders pursuant to the authority conferred on him by the President of the Supreme Federal Court under Article 43 of that court's Internal Rules. *See* Renzler Decl., Ex. A. Moreover, a five-member panel of the Supreme Federal Court reviewed the orders and unanimously "agree[d] to uphold" his actions. Renzler Decl., Ex. C at 2-3. Indeed, the President of the Supreme Federal Court recently stated that it is

---

[3] Although the case caption uses the term "Supreme Federal Tribunal," the court is properly referred to in English as the "Supreme Federal Court."

6

"appropriate and necessary" for Brazil to intervene in this case as "what is at issue" is "the independence of the Brazilian Judiciary, the integrity of the rule of law in Brazil, and, ultimately, national sovereignty itself." Official Letter PRES. STF No. 3332023, June 2, 2026, at 1, Renzler Decl., Ex. E.

The highest judicial authorities in Brazil have thus dispelled any notion that Justice Moraes acted in an *ultra vires* manner. *Belhas v. Ya'Alon*, 515 F.3d 1279, 1283 (D.C. Cir. 2008) ("In cases involving foreign sovereign immunity, it is … appropriate to look to statements of the foreign state that either authorize or ratify the acts at issue to determine whether the defendant committed the alleged acts in an official capacity."). Put simply, "[t]his is not a case … where an official went rogue, acted patently beyond his legal authority, or disregarded explicit governmental directives; rather, [the] suit challenges the manner in which [Justice Moraes] … exercised his official authority." *Hussein*, 129 F.4th at 118. There is thus no basis on which to deny that Brazil is the real party in interest, warranting its intervention.

Even if, assuming *arguendo*, Brazil were not the real party in interest (it is), Brazil nonetheless possesses the required direct, substantial, and legally protectable interest in this litigation to be allowed to intervene. Because Plaintiffs challenge the sovereign acts of Brazil's judiciary, the suit necessarily implicates Brazil's interest in "preserving the integrity of its [judicial] system," *Huff v. Commissioner*, 743 F.3d 790, 799 (11th Cir. 2014). This is undoubtedly a "sovereign interest" that is "precisely the type of legally protectable interest that has long formed the basis for intervention of right under Rule 24(a)(2)," *id*. (referring to the Virgin Islands' "sovereign interests in the administration

of its tax system"); *see also Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1250-52 (11th Cir. 2002) (allowing the state of Florida to intervene as of right to protect its interests in the interstate flow of water); *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135-36 (1967) (allowing California to intervene as of right to protect its interests in the natural gas market).

    **B.**    **Brazil's Interests Will Be Impaired if It Cannot Participate in the Litigation and It Is Not Adequately Represented by the Existing Parties.**

Brazil would suffer severe prejudice if it is not permitted to intervene to assert its defenses, including the defense of foreign sovereign immunity. Brazil, including its judiciary, enjoys presumptive sovereign immunity from Plaintiffs' claims. 28 U.S.C. § 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (internal quotation omitted); *see infra* Section II.A. Denying Brazil the ability to assert its sovereign immunity would undermine "sovereign immunity's basic objective," which is "to free a foreign sovereign from *suit*," *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017) (emphasis in original). It would further risk the Court proceeding to "consider[] … the merits in [Brazil's] absence," which would "itself [be] an infringement on … sovereign immunity," *Fla. Wildlife Fed'n Inc. v. United States Army Corps of Eng'rs*, 859 F.3d 1306, 1318 (11th Cir. 2017) (quoting *Pimentel*, 553 U.S. at 864-65).

Further, no existing party can adequately represent Brazil's sovereign interests. *Aerosonic LLC v. Joby Aero, Inc.*, No. 8:25-cv-554, 2026 U.S. Dist. LEXIS 41656, at *8 (M.D. Fla. Feb. 26, 2026) (finding "minimal" burden of satisfying this

criterion met where intervenor showed that "representation of [its] interest [by existing parties] 'may be inadequate'") (quoting *Chiles*, 865 F.2d 1197 at 1214); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972). Obviously, Plaintiffs cannot represent Brazil's interests, and Justice Moraes, even if he were to appear, cannot adequately represent Brazil's unique interests as a sovereign "given the legal and functional distinction between" him—a judge entitled to foreign official immunity—and Brazil itself, a foreign sovereign entitled to sovereign immunity. *See Preble-Rish Haiti, S.A. v. Republic of Haiti*, No. 21-cv-9040 (PKC), 2022 U.S. Dist. LEXIS 133673, at *9 (S.D.N.Y. July 27, 2022) (holding that representation of autonomous state-owned commercial bank by the Republic of Haiti, a sovereign State, or by a Haitian government agency—the existing parties to the lawsuit—was "likely inadequate" due to the legal and functional distinctions between the entities).

In sum, Brazil must be allowed to intervene to represent its interests, including its defense of sovereign immunity.

## II. This Action Must be Dismissed.

Dismissal is required for no fewer than six reasons: First, this Court lacks subject matter jurisdiction because Brazil is the real party in interest and is immune under the FSIA. Second, Brazil is an indispensable party that cannot be joined under Fed. R. Civ. P. 19. Third, even if Brazil were not the real party in interest, Justice Moraes is entitled to foreign official immunity. Fourth, the act of state doctrine bars inquiry into the validity of the Supreme Federal Court's orders. Fifth, the suit contravenes international comity. Sixth, the Court lacks personal jurisdiction.

9

### A.    Brazil Is the Real Party in Interest and Is Immune under the FSIA.

Dismissal is required as there is no subject matter jurisdiction in light of Brazil's sovereign immunity.  In that connection, the FSIA applies to this action because, as shown above, Brazil is the real party in interest.  *Sequeira v. Republic of Nicaragua*, No. 16-25052-CIV-MARTINEZ/GOODMAN, 2017 U.S. Dist. LEXIS 121670, at *11 (S.D. Fla. Aug. 1, 2017) (quoting *Samantar*, 560 U.S. at 325) ("[I]f the state is 'the real party in interest,' then the suit should be treated as an action against the foreign state itself to which the FSIA would apply."); *Hussein*, 129 F.4th at 110 (holding foreign official "entitled to invoke Egypt's sovereign immunity under the FSIA" because "Egypt [was] indeed the real party in interest"); *Odhiambo*, 930 F. Supp. 2d at 34 (whether claims against government officials are covered by the FSIA is determined by whether the foreign state is the "real party in interest"); *Edwards v. Fed. Gov't of Nig.*, No. 18-11133-FDS, 2018 U.S. Dist. LEXIS 212827, at *6 (D. Mass. Dec. 18, 2018) (holding FSIA "applies to the officials named as defendants" because Nigeria was "plainly the real party in interest"); *Nnaka*, 238 F. Supp. 3d at 30 (same); *Edwards v. Fed. Republic of Nigeria*, No. 23-1129 (CKK), 2026 U.S. Dist. LEXIS 51391, at *8 (D.D.C. Mar. 12, 2026) (same).

The FSIA "'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'"  *Nelson*, 507 U.S. at 355 (1993) (internal quotation omitted).  "[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Id*.  *See also Telchi v. Isr. Military Indus.*,

10

739 F. App'x 514, 515 (11th Cir. 2017) ("[I]t is well-established that a foreign state is presumptively immune from the jurisdiction of United States courts.") (internal quotation marks omitted).

The foreign state's entitlement to immunity applies unless a plaintiff demonstrates the applicability of one of the FSIA's enumerated exceptions to immunity. *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312-13 (11th Cir. 2009). Failure to identify an applicable exception to sovereign immunity is fatal as it is a plaintiff's "burden to prove the applicability of an FSIA exception and thus subject matter jurisdiction." *Comparelli v. Bolivarian Republic of Venez.*, No. 14-24414-CIV-WILLIAMS/MCALILEY, 2021 U.S. Dist. LEXIS 152554, at *2 (S.D. Fla. Aug. 13, 2021) (citing *Comparelli v. Republica Bolivariana De Venez.*, 891 F.3d 1311, 1319 (11th Cir. 2018)). Whether a plaintiff has satisfied that burden is determined by looking at "the allegations in the complaint [and] the undisputed facts, if any, placed before the court by the parties." *Id.* (quoting *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 80 (2d Cir. 2008)).

Here, Plaintiffs invoke none of the FSIA's exceptions to immunity. Their failure to identify "any applicable exception to sovereign immunity" requires dismissal. *Rosasen v. Norway*, No. 22-55980, 2024 U.S. App. LEXIS 8987, at *1 (9th Cir. Apr. 15, 2024); *see also Zhan v. World Bank*, No. 19-cv-1973 (DLF), 2019 U.S. Dist. LEXIS 201172, at *5 (D.D.C. Nov. 20, 2019). For instance, in *Butler*, the Eleventh Circuit affirmed dismissal of a lawsuit against the Russian Federation for lack of

11

subject matter jurisdiction because the complaint, *inter alia*, "fail[ed] to specifically invoke any of the FSIA's statutory exceptions." 579 F.3d at 1313.

Likewise, the Southern District of Florida found it lacked jurisdiction where the "Plaintiff d[id] not even allege or otherwise identify which clause of Section 1605(a)(2) it relie[d] upon for jurisdiction." *Ezemarval, LLC v. El Inst. Postal Dominicano*, No. 22-21822-CIV-MARTINEZ, 2024 U.S. Dist. LEXIS 79472, at *8-9 (S.D. Fla. Mar. 28, 2024). *Cf. Helmerich & Payne*, 581 U.S. at 178 (holding that even a "nonfrivolous argument" by the plaintiff that an FSIA exception applies "is insufficient" to establish jurisdiction).

Nor do Plaintiffs allege any facts that could conceivably implicate any of the FSIA's exceptions to immunity. Nothing in the Amended Complaint comes remotely close to alleging a waiver of sovereign immunity, 28 U.S.C. § 1605(a)(1); an action based on any form of commercial activity of Brazil, *id*. at § 1605(a)(1); a taking in violation of international law or the requisite jurisdictional nexus with the United States, *id. at* § 1605(a)(3); property acquired through succession or gifts or rights in immovable property, *id.* at § 1605(a)(4); a claim for money damages for personal injury or death, or damage to or loss of property, *id*. at § 1605(a)(5); an arbitration agreement or arbitral award to be enforced, *id.* at § 1605(a)(6); or any terrorism-related claims, *id.* at §§ 1605A, 1605B. In short, there is no jurisdiction under the FSIA.

## B.    Brazil Is an Immune Required Party under Rule 19.

Even if Brazil were not the real party in interest, the suit must still be dismissed. When a foreign sovereign is a required party under Rule 19(a), but is immune from

suit under the FSIA, dismissal of the suit is required.  This is because "Rule 19 requires joinder of a party who 'claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may … as a practical matter impair or impede the person's ability to protect the interest.'"  *GMI, LLC v. Asociación del Fútbol Argentino*, No. 13-21494-CIV-ALTONAGA, 2014 U.S. Dist. LEXIS 85023, at *20 (S.D. Fla. June 23, 2014).  Thus, where that party cannot be joined because it is an immune sovereign, "dismissal of the entire action is required." *Id*. at *20-21 (citing *Philippines v. Pimentel*, 553 U.S. 851, 867 (2008)).  *See also Pimentel*, 553 U.S. at 867  ("[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign[.]"); *Fla. Wildlife*, 859 F.3d at 1320 (applying *Pimentel* to state sovereign immunity and dismissing suit against the Army Corp of Engineers because the South Florida Water Management District was a required but immune party).

Brazil is a required party under Rule 19(a).  *See* Fed. R. Civ. P. 19(a)(1)(B)(i). Disposing of the suit in Brazil's absence would deprive it of the opportunity to assert its sovereign immunity and, if necessary, defend the legality and validity of orders issued by its highest court. *Pimentel*, 554 U.S. at 863-64 (affirming that the Philippines and its Presidential Commission "are required entities because [w]ithout [them] as parties …their interests in the subject matter are not protected") (alteration in original) (internal quotation marks omitted). *See also Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*,

13

471 F.3d 377, 389 (2d Cir. 2006) (a party that has a right to intervene under Rule 24(a)(2) qualifies as a required party under Rule 19(a)).

All four factors under Rule 19(b) support dismissal. *First*, Brazil would suffer severe prejudice if a judgment concerning the validity or legality of the challenged orders were rendered in its absence, Fed. R. Civ. P. 19(b)(1). Because Brazil is immune, "consideration of the merits" in its absence would "itself [be] an infringement on foreign sovereign immunity," *Pimentel*, 553 U.S. at 864. Brazil's "privilege" of sovereign immunity would be "much diminished if an important and consequential ruling affecting" its "substantial interest is determined … by a federal court in the sovereign's absence and over its objection." *Id.* at 868-69. Accordingly, this "primary" and "nearly dispositive" factor weighs strongly in favor of dismissal. *City Nat'l Bank of Fla. v. La. Apple, LLC*, No. 24-cv-23285, 2024 U.S. Dist. LEXIS 167180, at *10 (S.D. Fla. Sept. 17, 2024) (quoting *Hensley v. Hartford Cas. Ins. Co.*, 113 F.4th 1327, 1334 (11th Cir. 2024)).

*Second*, there are no measures that would lessen the prejudice to Brazil, Fed. R. Civ. P. 19(b)(2). Plaintiffs' requested relief—a declaration that the orders are unlawful under U.S. law, an injunction against enforcement and future judicial orders, and an award of damages against a Brazilian judge for issuing the challenged judicial orders— cannot be shaped to avoid conflict with Brazil's sovereign interests.

*Third*, a judgment in Brazil's absence would not adequately resolve Plaintiffs' complaints about the Supreme Federal Court's orders, Fed. R. Civ. P. 19(b)(3). "Going forward with the action without" Brazil "would not further the public interest

14

in settling dispute as a whole because" it "would not be bound by the judgment in an action where [it was] not" a party, *Pimentel*, 553 U.S. at 870-71. *See Richards v. Jefferson Cty.*, 517 U.S. 793, 798 (1996) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.") (quoting *Hansberry* v. *Lee*, 311 U.S. 32, 40 (1940)).

*Fourth*, Plaintiffs have an adequate remedy if the case is dismissed for nonjoinder: challenge the Supreme Federal Court's orders in the courts of Brazil. Regardless, in a suit implicating the interests of an absent sovereign, this factor would not weigh against dismissal even if Plaintiffs lacked an adequate remedy. *Pimentel*, 553 U.S. at 872 ("Dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims. But that result is contemplated under the doctrine of foreign sovereign immunity."); *Fla. Wildlife*, 859 F.3d at 1320 (same).

In sum, dismissal is required under Rule 19 because Brazil is an immune required party.

### C.    Justice Moraes Is Entitled to Foreign Official Immunity.

Even if Brazil were not the real party in interest (it is), the Court would still lack subject matter jurisdiction because Justice Moraes would be entitled to common law foreign official immunity. Brazil raises this defense on its own behalf exclusively, as "the immunity protecting foreign officials for their official acts ultimately belongs to the sovereign rather than the official," *Comparelli*, 2021 U.S. Dist. LEXIS 152554, at

*5 (quoting *Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486, 494 (S.D.N.Y. 2014)) (internal quotation marks omitted).

Foreign official immunity applies where: (1) the defendant "is a public minister, official, or agent of the foreign state;" (2) "the acts were performed in [the defendant's] official capacity;" and (3) "exercising jurisdiction would serve to enforce a rule of law against the foreign state." *Marron v. Moros*, No. 21-23190-CIV-MORE, 2023 U.S. Dist. LEXIS 175813, at *18 (S.D. Fla. Sept. 29, 2023) (quoting *Lewis v. Mutond*, 918 F.3d 142, 146 (D.C. Cir. 2019)). *See also* Restatement 2d of Foreign Relations § 66(f); *Fagan v. Cent. Bank of Cyprus*, No. 9:19-CV-80239, 2020 U.S. Dist. LEXIS 106343, at *6 (S.D. Fla. June 17, 2020) ("Common-law foreign sovereign immunity extends to individual foreign officials for acts performed in their official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state.") (internal quotation omitted). All three criteria are satisfied.

*First*, Plaintiffs accept that, as a Justice of Brazil's Supreme Federal Court, Justice Moraes is a public official of Brazil. ECF No. 38 ¶ 12; ECF No. 46 ¶ 2; *see supra* Section I.A.

*Second*, Justice Moraes' challenged conduct was performed in his official capacity as a Justice of that court. *See supra* Section I.A; *Aljabri v. Al Saud*, 106 F.4th 1157, 1163 (D.C. Cir. 2024) ("With respect to conduct-based immunity, foreign officials are immune from 'claims arising out of their official acts while in office.'") (quoting *Yousuf v. Samantar*, 699 F.3d 763, 774 (4th Cir. 2012)).

16

Plaintiffs are not helped by arguing that Justice Moraes somehow acted *ultra vires*, ECF No. 38 ¶ 13.  This is wrong, as demonstrated above.  At most, the Amended Complaint alleges (erroneously) that he acted in an unlawful manner.  However, "the scope of common law immunity" includes "acts the foreign official took in his official capacity, *even if those acts were unlawful*." *Comparelli*, 2021 U.S. Dist. LEXIS 152554, at *6 (emphasis added).  *See also Giraldo v. Drummond Co.*, 808 F. Supp. 2d 247, 249-50 (D.D.C. 2011), *aff'd* 493 Fed. Appx. 106 (D.C. Cir. 2012) ("[M]ere allegations of illegality do not serve to render an action unofficial for purposes of foreign official immunity. … [S]uch a rule would eviscerate the protection of foreign official immunity and would contravene federal law on foreign official immunity.").

Plaintiffs are not aided by *Yousuf v. Samantar*, as argued in ECF No. 12 at 52.  That case explains that foreign official immunity may be unavailable for "*private acts* that are not arguably attributable to the state, such as drug possession or fraud." 699 F.3d at 775 (emphasis added).  Such criminal acts bear no resemblance to the judicial orders at issue here.  As such, they far exceed the "arguably attributable to the state" standard articulated in *Yousuf v. Samantar. Id.*

*Third*, exercising jurisdiction would serve to enforce a rule of law against Brazil.  The relief sought by Plaintiffs requires this Court to rule that orders issued by Brazil's highest court are unlawful.  This element is "undoubtedly satisfied" in a suit seeking damages, declaratory, and injunctive relief where the "gravamen of Plaintiffs' claims" is that "state-sanctioned" public acts are "unlawful." *Li*, 2023 U.S. Dist. LEXIS

17

60329, at *12 n.5. *See also Moriah v. Bank of China, Ltd.*, 107 F. Supp. 3d 272, 280 (S.D.N.Y. 2015) (denying subpoena against Israeli official and holding that using his testimony "to pass judgment on the propriety of Israel's actions—would enforce a rule of law against Israel"). Here, the gravamen of Plaintiffs' suit is that orders issued and affirmed by Brazil's highest court violate U.S. law, including, *inter alia*, the First Amendment to the U.S. Constitution (Counts 1, 3, and 5), various federal statutes (Counts 2, 3, 4, and 5), and state common law (Counts 6 and 7). ECF No. 38 at 59-60. *See also* ECF No. 46 (First Cause of Action). Therefore, to decide the suit, the Court would need to impermissibly pass judgment on the validity of Brazil's public acts and enforce a rule of law against a foreign sovereign.

### D.    The Act of State Doctrine Requires Dismissal.

The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory." *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1253-54 (11th Cir. 2006) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)). It "requires that a court, after exercising jurisdiction, nevertheless decline to decide the merits of a case if in doing so it would need to judge the validity of the [sovereign's] public acts." *Chisholm & Co. v. Bank of Jamaica*, 643 F. Supp. 1393, 1403 (S.D. Fla. 1986). *See Glen*, 450 F.3d at 1256-57 (dismissing suit because it "require[d] U.S. courts to pass on the legality of the Cuban government's expropriation of property"); *Mezerhane v. República Bolivariana De Venez.*, 785 F.3d 545, 552 (11th Cir. 2015) ("Every sovereign state is bound to respect the independence of every other sovereign state,

18

and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory.") (internal quotation omitted).[4]

Here, the act of state doctrine requires dismissal because "to decide the merits" of the case, *Chisholm*, 643 F. Supp. at 1403, this Court would need to "inquir[e] into the validity of" Brazil's "public acts … committed within its own territory," *Glen*, 450 F.3d at 1253-54 (quoting *Sabbatino*, 376 U.S. at 401). Plaintiffs ask this Court to assess the legality of Supreme Federal Court's orders issued pursuant to Justice Moraes' duties as a Justice of that court. *See supra* Section II.C. According to the Amended Complaint, to grant Plaintiffs' requested relief, this Court must, *inter alia*, hold that the Supreme Federal Court's orders to suspend Rumble's operation "wrongfully, and without justification or privilege, intentionally interfered with [Rumble and Trump Media's] existing contracts and prospective business relationships." ECF No. 38 ¶ 153; *see also id.* ¶ 161 (Counts 6 and 7). Moreover, the Court must find that the orders:

- "undermin[e] fundamental constitutional protections enshrined in the First Amendment, clash[] with the Communications Decency Act and Stored Communications Act, and defy[] basic comity principles," *id.* ¶ 3 (Counts 1, 2, 3, and 4);

- target "speech that is fully protected under the First Amendment and shielded by statutory immunities such as the CDA"; "further no compelling interest or substantial interest"; and "are not narrowly tailored to achieve one," *id.* ¶¶ 102, 117 (Counts 1 and 2);

---

[4] The doctrine bars "a U.S. court 'from deciding a case when the outcome turns upon the legality or illegality'" of a foreign public act, "'whether as a matter of United States, foreign, or international law.'" *Malewicz v. City of Amsterdam*, 517 F. Supp. 2d 322, 337 (D.D.C. 2007) (quoting *Riggs Nat'l Corp. & Subsidiaries v. Comm'r of IRS*, 163 F.3d 1363, 1367 (D.C. Cir. 1999)); *see also Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 944, 954 (5th Cir. 2011).

- "compel" compliance that is "inconsistent with Section 230's immunity framework and thus preempted by federal law," *id*. ¶ 125 (Count 2);

- "conflict with basic First Amendment protections and disregard Section 230's safeguards, rendering them repugnant to U.S. public policy on international comity grounds," *id*. ¶ 132 (Count 3);

- "attempt to circumvent the US-Brazil MLAT, the Hague Convention on Service, and the letters rogatory process—all in contravention of principles of international comity and sovereignty," *id*. (Count 3);

- "conflict with and are preempted by federal law," *id*. ¶ 139 (Count 4); and

- "contradict[] core free-speech protections enshrined in the U.S. Constitution," *id*. ¶ 144 (Count 5).

In deciding these issues, the Court would necessarily have to "pass on the legality of" the Supreme Federal Court's actions and orders, *Glen*, 450 F.3d at 1257, and "condemn[]" them, *Sabbatino*, 376 U.S. at 417.

Plaintiffs' allegation that the orders were purportedly issued "outside the scope of Justice Moraes's authority," ECF No. 38 ¶ 14, has no bearing on the act of state analysis. In *Dvoinik v. Philipp*, the Eleventh Circuit rejected the argument that the act of state doctrine did not apply to a search of the plaintiffs' home, which was allegedly "performed without a valid search warrant," and to the alleged seizure of property "without authority." No. 23-12240, 2024 U.S. App. LEXIS 583, at *11 (11th Cir. Jan. 9, 2024) (internal quotation marks omitted). The court held that "the act of state doctrine … applies" to "official acts," regardless whether they were "valid or not." *Id*. at *10-11. The same result is compelled here because it cannot be doubted that, whether valid or not, the Supreme Federal Court's orders were "official acts."

20

### E.      International Comity Requires Dismissal.

International comity "refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 543 n.27 (1987). Comity "serves as a guide to federal courts where 'the issues to be resolved are entangled in international relations.'" *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1237 (11th Cir. 2004) (quoting *In re Maxwell Communication Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996)). There is a strong "comity interest in allowing a foreign state to use its own courts for a dispute if it has a right to do so" because of the harm to "[t]he dignity of a foreign state … if other nations bypass its courts without right or good cause." *Pimentel*, 553 U.S. at 866.

Courts routinely dismiss cases over which they have jurisdiction in favor of litigation in a foreign forum. For example, *Bi v. Union Carbide Chems. & Plastics Co.* affirmed dismissal of tort claims arising out of an Indian gas leak disaster where the Supreme Court of India had approved a settlement of these claims, concluding that any challenge to the settlement "must be made through the legislative or judicial channels that are available in India." 984 F.2d 582, 586 (2d Cir.1993). Likewise, *Ungaro-Benages*, 379 F.3d at 1238, affirmed the comity-based dismissal of a claim to recover Nazi-looted assets. The Eleventh Circuit credited, *inter alia*, "the strength of the German government's interests" in using an alternative forum established by Germany to hear claims by victims of the Nazi regime. *Id.* at 1239.

21

Comity requires dismissal in deference to Brazil's sovereign interest in ensuring that the legality of orders by its judiciary are litigated in Brazilian courts. Indeed, comity principles are at their peak because Plaintiffs not only seek to use U.S. courts to circumvent litigation in Brazil, they take the near-unprecedented step of suing a foreign judge based on dissatisfaction with his orders. Such a case could not be brought against a judge in the U.S. because judges "are entitled to absolute immunity from suits arising from acts taken in their judicial capacity," *Maps v. Miami Dade State Atty.*, 693 F. App'x 784, 785 (11th Cir. 2017). They possess "absolute immunity not only from damages, but also from suit itself," *Sloan v. McGrady*, No. 6:11-cv-2000-Orl-19GJK, 2012 U.S. Dist. LEXIS 14248, at *7 (M.D. Fla. Jan. 30, 2012) (citing *Mireles v. Waco,* 502 U.S. 9, 11 (1991)). This rule is "based on the principle that judges should be free to act upon [their] own convictions, without apprehension of personal consequences." *Sloan*, 2012 U.S. Dist. LEXIS 14248, at *7 (internal quotation omitted). "[P]rinciples of comity dictate that we accord the same respect to foreign officials as we do to our own," *Comparelli*, 2021 U.S. Dist. LEXIS 152554, at *4 (quoting *Giraldo*, 808 F. Supp. 2d at 251).

**F.     The Court Lacks Personal Jurisdiction.**

Personal jurisdiction is also lacking. "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Hemispherx Biopharma v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008). *See also Laster v. City of Albany*, 517 F. App'x

22

777, 777 (11th Cir. 2013) ("Valid service of process is a prerequisite for a federal court to assert personal jurisdiction over a defendant[.]").

The Court lacks personal jurisdiction over Brazil, the real party in interest. Under 28 U.S.C. § 1330(b), personal jurisdiction over a foreign sovereign exists when there is subject matter jurisdiction and valid service. *S & Davis Int'l, Inc. v. Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000). Neither is present. As discussed above, Plaintiffs fail to allege that an exception to the presumption of sovereign immunity applies, and the Amended Complaint does not allege facts that would bring this action within an FSIA exception. Nor have Plaintiffs attempted to serve Brazil, the real party in interest. *See Nationwide Prop. & Cas. Ins. Co. v. Wash. Mut. Bank, F.A.*, No. 3:10-CV-1, 2010 U.S. Dist. LEXIS 101130 at *9 (N.D.W.Va. Sept. 8, 2010) (vacating default judgment where the real party in interest "was not provided proper service and thus had no opportunity to defend"); 28 U.S.C. § 1608(a) (establishing requirements for service on a foreign sovereign). Therefore, both elements required for personal jurisdiction are absent.

## CONCLUSION

For the foregoing reasons, the Court should grant Brazil's motion to intervene as of right and dismiss this lawsuit with prejudice.

23

Dated: June 15, 2026                          Respectfully submitted,

                                              /s/ Madeleine K. Rodriguez
                                              Andrew B. Loewenstein (*pro hac vice* forthcoming)
                                              FOLEY HOAG LLP
                                              155 Seaport Boulevard
                                              Boston, MA 02210
                                              Tel: 617-832-1000
                                              aloewens@foleyhoag.com
                                              *Lead Counsel for Federative Republic of Brazil*

                                              Nicholas M. Renzler (*pro hac vice* forthcoming)
                                              FOLEY HOAG LLP
                                              1301 Avenue of the Americas
                                              25th Floor
                                              New York, NY 10019
                                              Tel: 212-812-0400
                                              nrenzler@foleyhoag.com

                                              Madeleine K. Rodriguez (0115796)
                                              FOLEY HOAG LLP
                                              155 Seaport Boulevard
                                              Boston, MA 02210
                                              Tel: 617-832-1000
                                              mrodriguez@foleyhoag.com
                                              *Counsel for Federative Republic of Brazil*

24

## LOCAL RULE 3.01(G) CERTIFICATION

I certify that on June 15, 2026 at 9:21 a.m. ET, counsel for Brazil contacted Plaintiffs' counsel by email to inquire whether Plaintiffs oppose the relief requested in this motion. At 9:52 a.m. ET, counsel for Rumble responded that his colleague would coordinate a time that day for counsel to confer. At 2:35 p.m. ET, counsel for Brazil wrote to Plaintiffs' counsel asking them to advise if and when they would like to meet. At 5:34 p.m. ET, counsel for Rumble emailed counsel for Brazil, indicating that their positions on the motion would be presented shortly. At 7:48 p.m. ET, having not yet received Plaintiffs' positions, counsel for Brazil reverted to counsel for Plaintiffs to inquire as to their positions. In response, counsel for Plaintiffs indicated that they take no position on Brazil's motion to intervene at this time and oppose Brazil's motion to dismiss. Plaintiffs' counsel requested that counsel for Brazil note that counsel for Brazil first contacted Plaintiffs' counsel today and requested a response the same day, "which did not provide sufficient time for [Plaintiffs' counsel] to fully consider this request."

/s/ Madeleine K. Rodriguez
Madeleine K. Rodriguez

25