**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| RUMBLE INC. and TRUMP MEDIA & TECHNOLOGY GROUP CORP. | ) ) ) | |
| Plaintiffs, | ) ) | **Civil Action No.** **8:25-cv-00411-MSS-AAS** |
| v. | ) ) | |
| ALEXANDRE DE MORAES, Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil | ) ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' JOINT OPPOSITION TO THE**
**FEDERATIVE REPUBLIC OF BRAZIL'S MOTION TO DISMISS**
**AND MEMORANDUM OF LAW IN SUPPORT**

## INTRODUCTION

This case asks a narrow question of U.S. law: may a foreign judge, without obtaining the permission of the U.S. government or going through any recognized treaty or protocol for international service, issue orders purporting to reach into Florida requiring U.S.-based companies to censor domestic speech, disclose user data unlawfully, and halt U.S. commercial payments? Of course not. Foreign judges cannot enforce foreign orders on American soil by email and call it law. If they could, the floodgates would not just open; they would disappear.

The Federative Republic of Brazil ("Brazil") disagrees. It moved to intervene on Defendant Alexandre de Moraes's response deadline and seeks dismissal on the theory that the challenged orders are sovereign, immune acts. That theory would render extraterritorial directives aimed at U.S. persons in the United States untouchable simply because a foreign judge issued them. Brazil's motion is a transparent deflection from Moraes's *ultra vires* conduct—conduct it cannot plausibly defend as sovereign and that, if accepted, would grant de facto worldwide jurisdiction to a single foreign judge.

The law does not permit that result, and Brazil knows it. Brazil's own Ministry of Justice told the U.S. Department of Justice ("DOJ") in June 2025 that Brazilian orders "operate strictly within" Brazil, have no "extraterritorial effect," and must be served "through the appropriate conventional channels"—

1

the MLAT and the Hague Convention. But weeks later, operating in contravention of Brazil's assurances and blatantly *ultra vires*, Moraes emailed another order to Rumble in Florida purporting to require a global ban of a U.S. user's account and removal of lawful content, threatening daily fines, barring the order's disclosure, and invoking no recognized legal channel.

The Executive Branch has been equally clear. On May 7, 2025, DOJ told Moraes that his orders are unenforceable here, that a foreign state "may not exercise jurisdiction to enforce in the territory of another state without the consent of the other state," and that any directive to Rumble must proceed through treaty channels. The State Department revoked Moraes's U.S. visa in July 2025 for his unlawful censorship campaign reaching "beyond Brazil's shores to target Americans." The Treasury Department sanctioned him for serious human rights abuse tied to this case. Brazil would leave Plaintiffs remediless for *ultra vires* conduct that the DOJ and its own Ministry of Justice have condemned, and which is in blatant derogation of the Constitution and U.S. law. Fortunately, the law is otherwise.

## ARGUMENT

## I.   Moraes Is the Real Party in Interest

As an initial matter, this Court's intervention order did not resolve whether Brazil is, in fact, the real party in interest; it observed only that Brazil

2

"asserts" as much. Dkt. 73. That assertion is wrong and, as discussed further below, infects much of Brazil's motion to dismiss.[1]

Plaintiffs sued Moraes in his individual capacity because he *acted* in his individual capacity and this suit is aimed at him personally. By emailing orders that purported to bind U.S. companies in the United States—outside treaty channels and contrary to U.S. law—he exceeded any judicial role and acted *ultra vires*. This suit seeks relief for those unlawful acts. The fact that he holds the status of judge does not make Brazil the real party in interest.

"[O]fficers sued in their personal capacity come to court as individuals, and the real party in interest is the individual, not the sovereign." *Lewis v. Clarke*, 581 U.S. 155, 162-63 (2017) (cleaned up). When evaluating whether a sovereign is the real party in interest, as Brazil claims, courts consider three factors: (1) how the complaint pleads capacity; (2) whether the claims target personal or sovereign acts; and (3) whether relief runs against the individual or the state. *See Hussein v. Maait*, 129 F.4th 99, 114-15 (2d Cir. 2025).

## A. Plaintiffs Sued Defendant in His Personal Capacity

The pleadings make clear this is a personal capacity suit. Brazil quotes allegations identifying Moraes as a Justice of the Supreme Federal Tribunal of

---

[1] When Brazil contacted Plaintiffs for their position on intervention, it did not reveal its intent to claim it was the real party in interest. Had it done so, Plaintiffs would have opposed rather than taken no position.

the Federative Republic of Brazil ("STF"), Mot. (Dkt. 66) at 5-6, which he undoubtedly is—but that is only the starting point. *Every single time* a court considers whether a foreign official was sued in an individual capacity, the defendant is necessarily a foreign official. The question is how the claims are pleaded. Brazil entirely ignores the pleadings' relevant allegations.

Plaintiffs challenge "Moraes's *ultra vires* attempts to illegally censor American companies." Am. Compl. (Dkt. 38) ¶ 1. They allege he acted "under the guise of" the STF, *id.* ¶ 2; that "[a]n official does not act in his or her official capacity where the challenged acts are outside the scope of [his] authority— i.e., the acts are *ultra vires*," *id.* ¶¶ 12-13; that his orders are "plainly outside" his authority "under both Brazilian law and multiple treaties," *id.* ¶¶ 14, 87-93; and that his "*ultra vires* acts" reflected personal "malice and hostility," *id.* ¶¶ 154, 162. Brazil's cherry-picked snippets do not convert an *ultra vires* case into an official-capacity suit. *Samantar v. Yousuf*, 560 U.S. 305, 308, 325 (2010) (personal-capacity claims governed by common law immunity, not FSIA). Brazil entirely ignores the dispositive fact that Moraes's conduct extended into the United States—presumably because it cannot justify that extraterritorial reach or any resulting violation of U.S. sovereignty.

The Supplemental Pleading reinforces the point. It alleges that Moraes emailed another order to Rumble in the United States, "not served through any lawful treaty mechanism," just weeks after Brazil's Ministry of Justice assured

4

DOJ that any such communications would proceed only through treaty channels, Suppl. Pl. (Dkt. 46) ¶¶ 3-4. Even DOJ suggested the orders are *ultra vires* and unenforceable here. Supp. Pl. ¶ 16; DOJ Letter (Dkt. 46-2).

*Nnaka v. Fed. Republic of Nigeria*, 238 F. Supp. 3d 17 (D.D.C. 2017) and *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17 (D.D.C. 2013), Mot. at 5, only confirm the distinction. Those plaintiffs sued—explicitly—foreign officials in their "official capacity." *Nnaka*, 238 F. Supp. 3d at 25 ("Nnaka is quite adamant that his suit is against Malami in his 'official capacity'"); *Kenya*, 930 F. Supp. 2d at 34-35 ("Odhiambo has sued the individual defendants in their official capacities"). Plaintiffs did the opposite here. This factor confirms that Moraes individually—not Brazil—is the real party in interest.

**B. The Claims Target *Ultra Vires* Conduct, Not Sovereign Action**

The second factor asks whether the claims target personal or sovereign conduct. *Maait*, 129 F.4th at 114-15. Brazil says this case "concerns acts of the Brazilian judiciary": orders by Justice Moraes "exercising his judicial powers." Mot. at 5. That characterization assumes the point in dispute. Not every act by a judge is a sovereign act. As the Supreme Court recognized in the analogous federal sovereign immunity context, "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682,

5

689 (1949).[2] Then "[t]he officer is not doing the business which the sovereign has empowered him to do," "[h]is actions are ultra vires," and he "may be made the object of specific relief." *Id.*

This is a case, as alleged, "where an official … acted patently beyond his legal authority." *Maait*, 129 F.4th at 118. The pleadings challenge Moraes's purported orders, which neither Brazilian law nor principles of international comity permit in the United States, and allege he acted outside accepted channels. Am. Compl. ¶¶ 87-93; Suppl. Pl. ¶¶ 3-4. The question is not whether Moraes is a judge, but whether the challenged conduct fell within the lawful sovereign authority. If not, the conduct is *ultra vires* and attributable to him, not Brazil. *Larson*, 337 U.S. at 689; *Phaneuf v. Republic of Indon.*, 106 F.3d 302, 306 (9th Cir. 1997) ("defin[ing] 'beyond the scope of the official's authority' to include anything the sovereign has not empowered the official to do").

No Brazilian judge has authority to impose unilateral judicial commands operative in the United States, nor can Brazil confer it. Article 43 and the alleged delegation (Mot. at 2, 6-7) concern, at most, authority to conduct an

---

[2] Larson addressed federal, not foreign, sovereign immunity. The principle nonetheless applies by analogy. The Second Circuit in *Hussein v. Maait* recognized that the *ultra vires* exception may be applicable in the foreign sovereign immunity context, analyzing whether a foreign official "acted patently beyond his legal authority." 129 F.4th at 118 ; *see also Garfield Cnty., Utah v. Trump*, 2026 WL 1801091, at *11 (10th Cir. June 23, 2026) (reaffirming *ultra vires* exception). The core principle that an official who exceeds the bounds of delegated authority acts as an individual and not as the sovereign is not limited to domestic immunity law.

inquiry *within* Brazil. Renzler Decl., Ex. A (Dkt. 67-1); Renzler Decl. Ex. B (Dkt. 67-2); Renzler Decl., Ex. C (Dkt. 67-3); Renzler Decl. Ex. E (Dkt. 67-4). They do not authorize service on U.S. companies by email, compulsion in Florida, censorship of U.S-based persons, production of U.S.-located data, or violations of U.S. law. *Id.* A U.S. judge's authority to issue a search warrant does not include authority to execute it in Brazil. *See, e.g.*, *In re Terrorist Bombings of U.S. Embassies in East Afr.*, 552 F.3d 157, 171 (2d Cir. 2008) (noting "the diplomatic and legal complications that would arise if American government officials traveled to another sovereign country and attempted to carry out a search of any kind, professing the authority to do so based on an American-issued search warrant" (cleaned up)). Nor could Congress authorize FBI agents to search homes in Rio de Janeiro simply by enacting a domestic statute; an FBI agent who independently travelled to Rio to conduct such a raid would act far outside of any lawful authority or delegation of power.

There are, of course, recognized mechanisms for cross-border enforcement; Brazil confirmed Moraes did not use them. The Ministry of Justice assured DOJ that Brazilian judicial decisions lack extraterritorial effect; that U.S. companies face no enforcement absent treaty-based service; and that communications must proceed exclusively through the MLAT or the Hague Convention. Suppl. Pl. ¶ 3; Ex. 1. The challenged orders did the opposite, both before and after the Ministry's clarification. Suppl. Pl. ¶¶ 4-5,

7

15-16. Brazil's representations to the United States alone are dispositive. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase" (cleaned up)).

*Nagy v. Naday*, 2019 WL 7578477, at *1 (D. Mass. June 28, 2019), is also no help. Mot. at 5. There, a pro se plaintiff challenged Hungarian orders but "allege[d] no specific facts" showing the judges acted "outside of their official duties." *Id.* at *2. Here, Plaintiffs allege that Moraes issued *ultra vires* directives into the United States without treaty service, U.S. consent, or compliance with U.S. law. Am. Compl. ¶¶ 1, 13-14, 87-93; Suppl. Pl. ¶¶ 3-4, 9, 17. This Court's findings reinforce that Moraes's conduct fell outside any lawful sovereign authority. Dkt. 26. *Belhas v. Ya'Alon*, 515 F.3d 1279, 1283 (D.C. Cir. 2008), Mot. at 7, likewise does not help Brazil. The relevant sovereign statement here is Brazil's own assurance to DOJ that Brazilian orders lack extraterritorial effect absent treaty-based service. Suppl. Pl. ¶ 3; Ex. 1.

The STF's March 2025 vote (Mot. at 3) does not change the result. Later endorsement cannot make lawful what Brazil could not authorize in the first instance: unilateral enforcement of a Brazilian order in the United States. Ex. 1. Nor can the vote cure the Ministry of Justice's June 2025 contrary representations to DOJ disclaiming extraterritorial effect—made after the filing of this action against Moraes and the March 2025 vote. *Id.*

And Moraes kept issuing orders to Rumble—including on July 11, 2025—without any STF vote or approval. Suppl. Pl. ¶¶ 4-11. Whatever Brazil claims about the March 2025 vote, no such "ratification" exists for that order. Ratification is required only for a narrow category of provisional measures; the July 11 order was not one of them. It was a unilateral decision that Moraes forwent submitting for ratification—just as his earlier submission was discretionary. Even on Brazil's own theory that ratification signals institutional approval (Mot. at 3), its absence here is telling. Brazil points to the March vote as proof of sovereign endorsement, yet the July 11 order—targeting a U.S. citizen, contradicting the Ministry of Justice's assurances, and prompting U.S. sanctions—received none. That asymmetry undercuts any "sovereign act" characterization and reinforces the *ultra vires* nature of Moraes's acts.

Finally, Plaintiffs do not challenge the "independence" of the Brazilian judiciary. Mot. at 6-7. Respect for foreign courts does not require surrendering U.S. law. Plaintiffs challenge the extraterritorial, unlawful effect of Moraes's orders in the United States, not their validity in Brazil.

### C. The Relief Runs Against Defendant, Not Brazil

The third factor—who bears relief—also points to Moraes. Plaintiffs seek a declaration against and damages from Moraes for *ultra vires* conduct, not payment from Brazil's treasury. Am. Compl. at 59-60; Suppl. Pl. at 7. That is

the hallmark of a personal-capacity suit. *Lewis v. Mutond*, 918 F.3d 142, 147 (D.C. Cir. 2019) ("Defendants have not proffered anything to show that Plaintiff seeks to draw on the DRC's treasury"). Nor would the injunction restrain the STF. Mot. at 6. Plaintiffs seek only to enjoin the domestic effect of Moraes's orders, absent compliance with appropriate international channels. Am. Compl. at 59-60. Courts may craft such relief without compelling sovereign "affirmative action." *Cf. WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 665 (N.D. Cal. 2020).

## II.    None of Brazil's Grounds for Dismissal Has Merit

Whether properly understood as an individual-capacity suit against Moraes, or improperly recast as a suit against Brazil, this case should proceed.

### A. Brazil Is Not a Required Party Under Rule 19

Brazil relies only on Rule 19(a)(1)(B)(i), which applies when proceeding without a party may "impair or impede" that party's ability to protect an asserted interest. Mot. at 13. Brazil argues that proceeding without it would deny it the opportunity to assert immunity and to defend the validity of its orders. *Id.* That argument fails.

Brazil lacks a "legally protected" Rule 19 interest. *See United States v. Janke*, 2009 WL 2525073, at *4 (S.D. Fla. Aug. 17, 2009). Brazil claims it seeks to protect the "integrity" of its judiciary (Mot. at 7), but Plaintiffs do not challenge the authority of Brazilian courts or judges to lawfully act within

10

Brazil. To that end, Brazil mischaracterizes this lawsuit. By purporting to act in the United States and outside of established legal channels, Moraes was *not* acting within his powers as a Brazilian judge; the Ministry of Justice's own unequivocal representations to DOJ confirm this point.

The actual interest Brazil seeks to protect—giving extraterritorial effect in U.S. courts to the orders at issue, even where doing so would violate the U.S. Constitution and other laws—is not cognizable under U.S. law. Courts consistently refuse to enforce foreign sovereign acts or judgments that violate U.S. law or policy. *See Banco Central de Reserva del Peru v. Riggs Nat'l Bank of Washington, D.C.*, 919 F. Supp. 13, 17 (D.D.C. 1994) ("Peruvian law cannot shield BCR from actions it took that it intended to have effect in the United States" that are "inconsistent with U.S. law"); *Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 480 (2d Cir. 2007) ("Foreign judgments that impinge on First Amendment rights will be found to be 'repugnant' to public policy" and thus unenforceable); *Bachchan v. India Abroad Publ'ns Inc.*, 585 N.Y.S.2d 661, 662 (N.Y. Sup. Ct. 1992) (nonrecognition of a foreign judgment repugnant to the First Amendment is "constitutionally mandatory"); *Yahoo!, Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 169 F. Supp. 2d 1181, 1189-90 (N.D. Cal. 2001) (holding unenforceable French judgment rendered under law prohibiting Nazi propaganda because such law would violate the First Amendment), *rev'd on other grounds*, 433 F.3d 1199 (9th Cir. 2006) (en

11

banc); *compare Republic of Phil. v. Pimentel*, 553 U.S. 851 (2008) (cited at Mot. at 13) (litigation to adjudicate ownership in specific property, and absent sovereign asserted its own ownership interest).

The other interest Brazil asserts—the "opportunity to assert sovereign immunity," Mot. at 13—is insufficient. Plaintiffs do not challenge Brazil's sovereign acts, but whether an official may purport to impose orders extraterritorially on U.S. citizens—conduct outside any official authority. "A lawsuit against a foreign official acting outside the scope of his authority does not implicate any of the foreign diplomatic concerns involved in bringing suit against another government in United States courts." *In re Est. of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1472 (9th Cir. 1994).

Brazil asserts that the Court's intervention order already resolves Rule 19, relying on *Hensley v. Hartford Cas. Ins. Co.*, 113 F.4th 1327 (11th Cir. 2024) and *Mastercard Int'l, Inc. v. Visa Int'l Serv. Assoc.*, 471 F.3d 377, 389 (2d Cir. 2006). Dkt. 78 at 5. Brazil has it exactly backwards. *Hensley* rejected that shortcut, finding that "[t]he fact that [a party] had a right to intervene does not end our inquiry." 113 F.4th at 1334-35 (conducting separate Rule 19 analysis). And *Mastercard* runs only one way: failure to satisfy Rule 19(a) defeats intervention as of right, not vice versa. 471 F.3d at 389; *see also, e.g.*, *W. Watersheds Project v. Haaland*, 22 F.4th 828, 842 (9th Cir. 2022) ("Rule 24,

12

unlike Rule 19, does not require us to determine whether [the intervenor] is a necessary or indispensable party.").

Even if Brazil were required (it is not), dismissal would not be appropriate. Rule 19(b) asks "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Courts consider: "(1) how prejudicial a judgment would be to the nonjoined and joined parties, (2) whether the prejudice could be lessened depending on the relief fashioned, (3) whether the judgment without joinder would be adequate, and (4) whether the plaintiff would have any alternative remedies were the case dismissed for nonjoinder." *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999). Each factor decidedly favors proceeding.

First, Brazil overstates any prejudice. Mot. at 14. Plaintiffs do not seek to invalidate Moraes's orders in Brazil, restrain Brazilian courts, or challenge Brazil's domestic authority. They seek only relief concerning the unlawful, extraterritorial, and *ultra vires* attempts to enforce those orders in the United States in the absence of any recognized international legal process. That relief would not impair Brazil's internal affairs. *Cf. N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1282 (10th Cir. 2012) (sovereign prejudiced because absence impaired jurisdictional interests).

Second, any conceivable prejudice can be eliminated by tailored relief. Any judgment can address only the orders' effect in the United States, not their

13

validity or operation in Brazil. *In re Agrokor D.D.*, 591 B.R. 163, 167, 197 (Bankr. S.D.N.Y. 2018) (enforcing a settlement agreement within the territorial jurisdiction of the United States while stating that courts in other jurisdictions will independently determine whether to recognize and enforce it). That respects Brazil's domestic authority while protecting U.S. law.

Third, the judgment would be adequate. Brazil says it would not be bound, Mot. at 15, but Rule 19(b)(3) asks whether the Court can afford complete relief among the parties before it, not whether every nonparty with an asserted interest will be bound by the judgment. Plaintiffs do not seek, do not want, and do not need an order against Brazil—precisely because Moraes's unlawful actions were *not* the actions of Brazil, but the actions of a rogue individual acting far outside of his authority; Plaintiffs need a ruling on the domestic legal effect of those orders. Unlike *Pimentel*, this case is not a dispute over specific property claimed by a sovereign. The Court can therefore afford complete relief and fully adjudicate the rights of the parties before it.

Finally, Brazil offers no adequate alternative forum. Plaintiffs challenge U.S. enforceability, not Brazilian validity. Brazilian courts cannot determine whether, or to what extent, those orders may be recognized or enforced under U.S. law. *See GDG Acqusitions, LLC. v. Gov't of Belize*, 749 F.3d 1024, 1032 (11th Cir. 2014). Those are questions for United States courts, and the relief Plaintiffs seek is therefore unavailable in Brazil's proposed alternative forum.

14

Nor should Plaintiffs be forced into Brazil. That would cause substantial prejudice. Plaintiffs are U.S.-based American companies with no employees, operations, or assets in Brazil, and Moraes's orders sought to force Brazilian jurisdiction by requiring a local representative. Am. Compl. ¶¶ 82, 89. Requiring Plaintiffs to litigate in Brazil, and thus consent to Brazilian jurisdiction, would give those *ultra vires* orders the very effect this suit challenges. Rule 19(b) does not support dismissal of this action.

## B. The FSIA Does Not Require Dismissal

Brazil says the Foreign Sovereign Immunities Act ("FSIA") requires dismissal. Mot. at 10-12; 28 U.S.C. §§ 1330, 1602-11. To begin, because Brazil is neither the real party in interest nor a required party, FSIA immunity is unavailable. Either way, Brazil's late intervention cannot justify dismissal with prejudice. Plaintiffs filed the operative pleadings before Brazil appeared and had no reason to plead around FSIA defenses belonging to a nonparty. If the Court finds that Brazil is the real party in interest or a required party, Plaintiffs should be granted leave to amend under Rule 15(a)(2) to address Brazil's assertions and plead an exception to sovereign immunity. *See Intercontinental Indus. Corp. v. Wuhan State Owned Indus. Holdings Co.*, 619 Fed. App'x 592, 594 (9th Cir. 2015); *Isaac Indus., Inc. v. Petroquimica de Venez., S.A.*, 2022 WL 820376, at *15 (S.D. Fla. Mar. 1, 2022).

### C. Moraes Is Not Entitled to Common Law Immunity

Brazil's common law immunity argument, Mot. at 15-18, fails under the relevant two-step framework. Because the FSIA does not govern foreign official immunity, *Samantar*, 560 U.S. at 323-26, courts first ask whether the State Department has filed a suggestion of immunity. *Id.* at 311-12. Courts afford State Department immunity determinations "substantial weight." *Yousuf v. Samantar*, 699 F.3d 763, 773 (4th Cir. 2012) ("courts respect … the views of the Executive Branch"). If the State Department declines to act, or no suggestion is made, the court decides for itself whether "all the requisites for such immunity exist[]." *Samantar*, 560 U.S. at 311.

Step one favors Plaintiffs. The State Department has not suggested immunity, and the Executive Branch record affirmatively weighs against it. The State Department revoked Moraes's U.S. visa in July 2025 for his unlawful censorship campaign reaching "beyond Brazil's shores to target Americans." Exs. 2-4. DOJ objected to Moraes's attempted domestic enforcement of his *ultra vires* orders. DOJ Letter (Dkt. 46-2). Treasury sanctioned Moraes in July 2025 for "extraterritorial overreach," including "issu[ing] orders to U.S. social media companies to block or remove hundreds of accounts, … including U.S. persons." Ex. 2. The record warrants "substantial weight" against immunity. *Cf. United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997) ("by pursuing Noriega's capture and this prosecution, the Executive Branch has manifested its clear

16

sentiment that Noriega should be denied head-of-state immunity"); *United States v. Pangang Grp. Co.*, 135 F.4th 1142, 1160-61 (9th Cir. 2025) (deferring to Executive Branch's immunity determination).[3]

Brazil also fails at step two. Under the Restatement test Brazil invokes, Mot. at 16,[4] immunity requires that (1) Moraes be a foreign official; (2) he acted in his official capacity; and (3) jurisdiction would enforce a rule of law against Brazil. *Marron v. Moros,* 2023 WL 6356969, at *6 (S.D. Fla. Sept. 29, 2023). Brazil cannot satisfy the second or third element.

The second element fails because Plaintiffs challenge *ultra vires* conduct, not ordinary judicial acts within lawful authority. *See supra* Part I.B. No Brazilian law or doctrine of international law authorizes Moraes to bind U.S. persons in the United States and not otherwise subject to Brazilian jurisdiction without going through recognized legal channels.

The third element fails because Brazil does not "show that Plaintiff[s] seek[] to draw on [Brazil's] treasury or force the state to take specific action."

---

[3] The Treasury Department lifted the sanctions against Moraes in December 2025. But it did not in any way suggest that its initial determination or criticism was in error. To the contrary, sanctions are coercive and not punitive, *Dames & Moore v. Regan*, 453 U.S. 654, 673-74 (1981). Contemporaneous reports indicated the sanctions were lifted because U.S. officials viewed "the passage of an important amnesty bill by Brazil's lower house as a signal that lawfare conditions in Brazil are improving." *US removes Brazilian Supreme Court justice and his wife from sanctions list*, Courthouse News Service (Dec. 12, 2025), https://www.courthousenews.com/us-removes-brazilian-supreme-court-justice-and-his-wife-from-sanctions-list/.

[4] *See Samantar*, 560 U.S. at 321 n.15; *Broidy Cap. Mgmt. LLC v. Muzin*, 12 F.4th 789, 803 (D.C. Cir. 2021) ("It is unclear whether the Restatement articulates the correct standard. Neither the Supreme Court nor this court has ever endorsed it.").

*Newpoint Fin. Corp. v. Berm. Monetary Auth.*, 680 F. Supp. 3d 1151, 1164 (C.D. Cal. 2023). It cannot. As explained already, Plaintiffs seek neither recovery from Brazil's treasury or an order compelling Brazil to act or refrain from acting. The only relief sought is against Moraes personally. *Id.* at 1164-65 (jurisdiction proper where relief against foreign officials personally would neither reach the sovereign's treasury nor require sovereign action); *Mutond*, 918 F.3d at 147 ("Defendants have not proffered anything to show that Plaintiff seeks to draw on the DRC's treasury or force the state to take specific action").

### D. The Act-of-State Doctrine Does Not Apply

The Act-of-State doctrine bars judicial inquiry "into the validity of the public acts of a recognized foreign sovereign power committed within its own territory." *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1253-54 (11th Cir. 2006). It therefore "does not preclude judicial review of the extraterritorial effects of acts of state." *Universal Trading & Inv. Co. v. Kiritchenko*, 2007 WL 2669841, at *8 (N.D. Cal. Sept. 7, 2007).

Plaintiffs do not ask this Court to invalidate Moraes's orders in Brazil. They challenge only whether those orders have legal effect in the United States. In *In re Grand Jury Proceedings (Bank of Nova Scotia)*, the Eleventh Circuit held the doctrine "completely inapplicable" where a foreign court order "purported to control conduct in the United States," and the district court had

18

not "passed upon the validity of any act of a foreign state." 740 F.2d 817, 831-32 (11th Cir. 1984). The same is true here.

Nor does denying domestic effect call a foreign order's validity into question. A foreign order may be valid where issued yet unenforceable here absent recognition. *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 893686, at *12 (S.D.N.Y. Mar. 24, 2025) ("In the absence of recognition, [a] foreign court may exercise jurisdiction to enforce its order in its own territory, but it may not do so in the territory of another country.").

### E. International Comity Weighs Against Dismissal

International comity, Mot. at 21-22, does not support dismissal. Comity is "discretion[ary]," "not obligatory." *Lee v. Miller Cnty., Ark.*, 800 F.2d 1372, 1376 n.13 (5th Cir. 1986). It "expires when the strong public policies of the forum are vitiated by the foreign act." *Rodriguez v. Pan Am. Health Org.*, 502 F. Supp. 3d 200, 230 (D.D.C. 2020). Extending comity here would require enforcing restrictions that would be unconstitutional under the First Amendment, and contrary to U.S. law under the Stored Communications Act, 18 U.S.C. § 2702(a), if imposed domestically. Courts routinely refuse to do either. *See, e.g., Sarl Louis Feraud Int'l S.A.*, 489 F.3d at 480 ("Foreign judgments that impinge on First Amendment rights will be found to be 'repugnant' to public policy"); *Bachchan*, 585 N.Y.S.2d at 662 ("constitutionally mandatory" to refuse foreign judgment repugnant to First Amendment); *Laker*

19

*Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984) ("No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum.").

Brazil's own representations independently defeat comity. Its Ministry of Justice represented that Brazilian judicial decisions "operate strictly within" Brazil and "should not be construed as exerting extraterritorial effect*, nor are they intended to impose obligations upon entities or individuals beyond the bounds of Brazilian sovereignty*." Ex. 1. Brazil cannot invoke comity to give those same orders extraterritorial force. Public policy, federal law, and Brazil's inconsistent position each foreclose dismissal.

### F. The Court Has Personal Jurisdiction Over Moraes

The Court unquestionably has jurisdiction over Moraes because he deliberately reached into this District by purporting to serve his *ultra vires* orders here. Brazil nonetheless argues this Court lacks personal jurisdiction because Plaintiffs did not plead an FSIA exception or serve Brazil. Mot. at 23. Of course, Plaintiffs never attempted to serve Brazil: this isn't a case against Brazil. Because Brazil is *not* the real party in interest, *not* a required party, and Plaintiffs seek no relief from Brazil, it is irrelevant whether there is personal jurisdiction over Brazil or whether it has been served.

### CONCLUSION

The Court should deny Brazil's motion to dismiss.

20

Dated: July 14, 2026   Respectfully submitted,

By: E. Martin De Luca*
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
mdeluca@bsfllp.com

***Lead Counsel for Plaintiff
Rumble Inc.***

Matthew L. Schwartz*
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300

Andrew H. Smith*
BOIES SCHILLER FLEXNER LLP
1401 New York Ave. NW
Washington, DC 20005
(202) 274 1163

Rossana Baeza
FLA. BAR NO. 1007668
BOIES SCHILLER FLEXNER LLP
100 S.E. 2nd Street, Suite 2800
Miami, Florida 33131
(305) 539-8400

***Counsel for Plaintiff Rumble Inc.***

Caryn G. Schechtman*
DLA Piper LLP (US)

21

1251 Avenue of the Americas
New York, New York 10020
caryn.schechtman@dlapiper.com
(212) 335-4500

***Lead Counsel for Plaintiff***
***Trump Media & Technology Group***
***Corp.***

Christopher G. Oprison
DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
chris.oprison@dlapiper.com
(305) 423-8500

***Counsel for Plaintiff***
***Trump Media & Technology Group***
***Corp.***

***\*Admitted pro hac vice***

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of July, 2026, a true and correct copy of the foregoing was filed with the Court's CM/ECF system. Plaintiffs also served the foregoing under the methods of service authorized in the Court's Alternate Service Order, including by email to gabmoraes@stf.jus.br.

/s/ *E. Martin De Luca*
E. MARTIN DE LUCA

23