

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RUMBLE INC. and TRUMP MEDIA**
**&**
**TECHNOLOGY GROUP CORP.,**

**Plaintiffs,**

**v.**

**ALEXANDRE DE MORAES, Justice of the**
**Supreme Federal Tribunal of the Federative**
**Republic of Brazil,**

**Defendant.**

**Case No. 8:25-cv-00411-MSS-AAS**

_____/

# LIMITED SUPPLEMENTAL AMICUS CURIAE MEMORANDUM REGARDING FEDERAL RULE OF CIVIL PROCEDURE 44.1

## INTRODUCTION

Brazil's Motion to Dismiss depends on a threshold proposition: that Brazilian law authorized Justice Alexandre de Moraes to undertake the specific conduct challenged in this action, including directives allegedly transmitted into Florida outside recognized treaty channels and intended to compel conduct by United States companies within the United States. From

4

that premise, Brazil argues that the conduct was sovereign, that Brazil is the real party in interest, and that multiple immunity and abstention doctrines require dismissal.

But the premise is not self-proving. Whether Brazilian law authorized the particular conduct is a question of foreign law governed by Federal Rule of Civil Procedure 44.1. Under that Rule, the Court must independently determine foreign law as a question of law. A foreign government's account is important, but it does not bind the Court. ***Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co., 585 U.S. 33, 42-46 (2018)***.

That independent determination is especially important where the record, as characterized in the parties' submissions, contains materially different descriptions of the territorial reach of Brazilian judicial authority. Plaintiffs state that Brazil's Ministry of Justice advised the United States Department of Justice that Brazilian judicial decisions operate within Brazil, lack extraterritorial effect, and must proceed through established international channels when directed abroad. Dkt. 83 at 2-3, 8-9, 20. Brazil, by contrast, asks the Court to treat the challenged directives as authorized sovereign acts capable of supporting dismissal. Although Plaintiffs have addressed the substantive conflict, Rule 44.1 provides an additional procedural and analytical framework for resolving it. The Rule requires an

5

independent judicial determination rather than acceptance of either litigant's characterization of foreign law.

# ARGUMENT

## I. RULE 44.1 REQUIRES AN INDEPENDENT JUDICIAL DETERMINATION OF BRAZILIAN LAW.

Rule 44.1 provides that a party intending to raise foreign law must give written notice, that the Court may consider any relevant material or source, and that the Court's determination must be treated as a ruling on a question of law. Fed. R. Civ. P. 44.1. The Rule was designed to free federal courts from treating foreign law as an ordinary disputed fact and to permit independent examination of legal texts, expert submissions, official statements, translations, and other reliable materials.

The Supreme Court's decision in **_Animal Science_** is controlling. There, the Court rejected a rule requiring conclusive deference to a foreign government's interpretation of its own law. **_585 U.S. at 42-46_**. The Court held that the appropriate weight depends on the statement's clarity, thoroughness, support, context, purpose, transparency, consistency, and other relevant circumstances. Id. at 44-45. Thus, an official foreign

6

submission may be highly persuasive, but it cannot substitute for the federal court's own legal determination.

Eleventh Circuit authority applies the same structure. In ***Belleri v. United States***, the court explained that foreign-law determinations are rulings on questions of law and that the court may consider any relevant source under Rule 44.1. ***712 F.3d 543, 547-48 (11th Cir. 2013)***. See also ***Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 781 (11th Cir. 2004) (recognizing Rule 44.1's notice requirement and the distinct treatment of foreign law)***, abrogated on other grounds by ***Diamond Crystal Brands, Inc. v. Food Movers International, Inc., 593 F.3d 1249 (11th Cir. 2010)***. The former Fifth Circuit likewise held that foreign law is a question of law under Rule 44.1. ***First National City Bank v. Compania de Aguaceros, S.A., 398 F.2d 779, 781-82 (5th Cir. 1968)***. ***Under Bonner v. City of Prichard, pre-October 1, 1981 former Fifth Circuit decisions are binding in this Circuit. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)***.

Accordingly, Brazil's descriptions of Article 43, STF procedures, delegation, ratification, and the asserted official character of the challenged orders are legal submissions to be evaluated, not adjudicative facts to be presumed. The same is true of Plaintiffs' competing descriptions. The Court

7

must identify the governing Brazilian legal provisions and independently determine what those provisions authorized.

## II. BRAZIL'S IMMUNITY THEORIES DEPEND ON A PRIOR DETERMINATION OF THE LAWFUL SCOPE OF DEFENDANT'S AUTHORITY.

Brazil's motion places the foreign-law question at the foundation of several defenses. Its real-party-in-interest theory depends on treating the challenged acts as acts of the sovereign. Its common-law immunity theory depends on treating the conduct as performed in an official capacity. Its Rule 19 theory depends on an asserted sovereign interest in defending the validity and integrity of authorized judicial acts. Its act-of-state and comity theories likewise depend on characterizing the conduct as a valid public act of Brazil.

Those conclusions cannot precede the foreign-law determination on which they depend. If the relevant Brazilian authorities empowered only domestic investigative or judicial measures, but did not authorize coercive commands intended to operate in Florida without treaty procedures or United States consent, the legal characterization of the conduct changes materially. Conversely, if Brazil establishes through persuasive legal materials that Brazilian law authorized the precise conduct alleged, the Court can evaluate the resulting immunity questions on that established premise. Rule 44.1 requires the premise to be examined rather than assumed.

8

Persuasive appellate authority emphasizes that Rule 44.1 gives courts broad power to conduct independent research but does not relieve the proponent of foreign law from supplying an adequate legal basis. ***Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 440-41 (3d Cir. 1999)***. A party cannot obtain a dispositive ruling by offering only general conclusions about foreign law while leaving the court without a sufficient basis to determine the governing rule. Id. That principle is particularly important where dismissal would terminate claims before factual development and where the asserted foreign law determines whether the conduct is sovereign or ultra vires.

### III. THE COURT SHOULD REQUIRE A SOURCE-SPECIFIC ANALYSIS OF FOUR UNRESOLVED FOREIGN-LAW QUESTIONS.

The current briefing identifies at least four questions that should be resolved under Rule 44.1 before the Court accepts Brazil's sovereign-act premise.

First, what specific Brazilian constitutional, statutory, procedural, or decisional authority empowered Justice Moraes to direct coercive obligations toward United States companies in Florida? A general grant of authority to conduct an inquiry or issue domestic orders does not necessarily answer whether Brazilian law authorized the orders' asserted operation abroad.

Second, what was the legal effect and scope of the STF's March 2025 vote? Plaintiffs argue that the vote concerned particular provisional

9

measures and did not ratify all later conduct. Dkt. 83 at 8-10. The Court should determine, from the relevant Brazilian legal texts and official records, precisely which acts were ratified, what ratification means under Brazilian law, and whether ratification can expand territorial authority beyond Brazil.

Third, did any STF body ratify or otherwise adopt the later July 11, 2025 order described in the supplemental pleading? Plaintiffs contend that no such institutional approval occurred. Dkt. 83 at 9-10. If Brazil relies on institutional adoption to establish sovereign character, the existence and legal consequence of adoption for each challenged act must be established rather than generalized.

Fourth, how does Brazil reconcile the authority asserted in this litigation with the Ministry of Justice's reported statement to the United States that Brazilian judicial orders operate within Brazilian territory, lack extraterritorial effect, and require conventional international channels abroad? Dkt. 83 at 2-3, 8-9, 20. Under ***Animal Science***, consistency, context, purpose, and supporting materials are factors in deciding the weight given to a foreign government's description of its own law. ***585 U.S. at 44-45***. The Court should assess both statements and the legal sources supporting each.

## IV. EVEN A FINDING OF AUTHORITY UNDER BRAZILIAN LAW WOULD NOT DETERMINE THE DIRECTIVES' DOMESTIC LEGAL EFFECT IN THE UNITED STATES.

The foreign-law inquiry and the domestic-effect inquiry are related but distinct. Rule 44.1 governs what Brazilian law authorized. United States law governs whether a foreign directive may create enforceable legal obligations within the United States. Thus, even if the Court ultimately concludes that Brazilian law authorized Justice Moraes to issue the challenged orders as a matter of Brazilian law, that conclusion would not itself establish that the orders could be enforced in Florida, compel United States companies, override United States statutory protections, or bypass applicable international procedures.

This distinction prevents the Rule 44.1 inquiry from being misunderstood as an invitation to review or invalidate Brazilian adjudications. An order may be valid where issued and still lack automatic domestic effect in another sovereign's territory. The Court can therefore respect Brazil's authority to determine the validity of judicial acts within Brazil while independently determining the consequences, if any, those acts may have under United States law.

The point also confirms why Brazil's requested dismissal is premature. Proof that an official possessed domestic authority is not the same as proof

11

that the official possessed authority to exercise coercive governmental power in the United States. The Motion to Dismiss must establish both the asserted official character of the conduct and the legal basis for the domestic consequences Brazil asks this Court to recognize. Rule 44.1 addresses the first question; federal constitutional, statutory, jurisdictional, and comity principles govern the second.

## V. THE APPROPRIATE RESULT IS DENIAL OF DISMISSAL OR, AT MINIMUM, DEFERRAL PENDING FOCUSED RULE 44.1 SUBMISSIONS.

Because Brazil's dispositive theories depend on unsettled propositions of Brazilian law, the Court should not dismiss on the assumption that the challenged conduct was necessarily authorized sovereign conduct. Plaintiffs' operative allegations must be evaluated against a properly determined body of foreign law, not against labels supplied by the moving party. And even a determination that the conduct was authorized under Brazilian law would leave the separate domestic-effect question for resolution under United States law.

The Court may deny the Motion to Dismiss because Brazil has not established the foundational legal premise required by its defenses.

12

Alternatively, the Court may defer ruling and direct focused submissions under Rule 44.1 identifying: (1) the original Portuguese texts and certified translations of the provisions relied upon; (2) the legal basis for any claimed extraterritorial authority; (3) the scope and effect of the March 2025 vote; (4) the status of the July 11, 2025 order; and (5) the relationship between those authorities and the Ministry of Justice's communications to the United States.

That limited procedure would not require the Court to sit in review of the correctness of Brazilian adjudications. It would perform the distinct and ordinary function assigned by Rule 44.1: determining the content of foreign law when that law is invoked as the basis for a dispositive ruling in a United States court. The Court would then separately determine the domestic legal effect of the challenged directives under United States law.

## CONCLUSION

For these reasons, Proposed Amicus respectfully submits that the Court should independently determine the scope of Brazilian law under Rule 44.1 before accepting Brazil's characterization of the challenged conduct as authorized sovereign action. Even if Brazilian law authorized the issuance of the challenged directives, the Court must separately determine whether those directives possess any domestic legal effect under United States law. The Court should deny the Federative Republic of Brazil's Motion to Dismiss

13

or, alternatively, defer ruling and require focused, source-specific submissions sufficient to resolve the foreign-law questions on which Brazil's defenses depend.

Respectfully submitted,

Rogerio Chaves Scotton, Pro Se
160 W. Camino Real, Suite 102
Boca Raton, Florida 33432
Telephone: (561) 878-9001
Email: rs@legalhelp4y.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 29, 2026, I mailed the original of the foregoing document to the Clerk of the United States District Court for the Middle District of Florida, Tampa Division, by United States Postal Service Certified Mail.

I further certify that on July 29, 2026, a true and correct copy of the foregoing document was served by email upon the following counsel of record:

Counsel for Plaintiffs Rumble Inc. and Trump Media & Technology Group Corp.:

Harmeet K. Dhillon, Esq.
Dhillon Law Group Inc.
harmeet@dhillonlaw.com

Ron Coleman, Esq.

14

Coleman Nation
ron@coleman.nation


Stephen McClure, Esq.
Dhillon Law Group Inc.
smcclure@dhillonlaw.com


A true and correct copy was also transmitted by email to counsel of record for the

Defendant, using the email address reflected on the Court's docket:



Courtesy copies were also transmitted to the following governmental offices.

These courtesy transmissions were not intended to constitute formal service of

process or to make those offices parties to this action:

Advocacia-Geral da União
gabinete@agu.gov.br


Consulate General of Brazil in Miami
consular.miami@itamaraty.gov.br


Supreme Federal Court of Brazil
secretaria@stf.jus.br

U.S. Department of State
Bureau of Democracy, Human Rights, and Labor
DRL-PublicAffairs@state.gov


U.S. Department of Justice

15

Human Rights and Special Prosecutions Section
hrsp.tip@usdoj.gov


U.S. Department of the Treasury
Office of Foreign Assets Control
OFAC_feedback@treasury.gov

U.S. Embassy in Brasília
BrasiliaACS@state.gov

Rogerio Chaves Scotton, Pro Se
160 W. Camino Real, Suite 102
Boca Raton, Florida 33432
Telephone: (561) 878-9001
Email: rs@legalhelp4y.com

16