## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| RUMBLE INC. and TRUMP MEDIA & TECHNOLOGY GROUP CORP.<br><br>Plaintiffs,<br><br>v.<br><br>ALEXANDRE DE MORAES, Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil<br><br>Defendant. | Civil Action No.<br>8:25-cv-00411-MSS-AAS |

## THE FEDERATIVE REPUBLIC OF BRAZIL'S
## REPLY IN SUPPORT OF MOTION TO DISMISS

Nothing in Plaintiffs' opposition calls into question the fact that Brazil—appearing on its own behalf, *see* ECF No. 66 at 15; ECF No. 68 at 1—is the real party in interest and that the action must therefore be dismissed under the FSIA.[1]

## I. Brazil is the Real Party in Interest

Plaintiffs do not dispute that a lawsuit against a foreign government official acting in his official capacity "should be treated as [an] action[] against the foreign state itself, as the state is the real party in interest." *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010). Instead, they pretend to have sued Justice Moraes in his personal capacity. ECF No. 83 at 3. But each of the "three key (but non-exclusive) factors" confirms that Brazil is the real party in interest, *Hussein v. Maait*, 129 F.4th 99, 113 (2d Cir. 2025).

*First*, courts "consider the process by which the plaintiff sues the defendant, looking to whether the plaintiff states that he is suing the foreign official in his personal capacity or in his official capacity." *Id.* at 114 (citing *Samantar*, 560 U.S. at 325). This is determined by how the plaintiff describes the defendant in the complaint, and particularly its case caption. *Id.* Here, the Amended Complaint does *not* say in the caption—or anywhere else—that Justice Moraes is sued in his personal capacity. Instead, the caption states: "ALEXANDRE DE MORAES, Justice of the Supreme

---

[1] Nor does the opposition provide any cogent reason not to dismiss for the other reasons set out in the motion to dismiss. As to Brazil's status as a required party under Rule 19, *Samantar* recognized a plaintiff might name only a foreign official as a defendant but "the foreign state itself" may be a required party under Rule 19(a)(1)(B). 560 U.S. at 324. Where joinder to a suit against an official is required and the entity required to be joined is "immune from suit under the FSIA," the court "may have to dismiss the suit … regardless of whether the official is immune or not under the common law." *Id.* at 324-25. *See also Hussein*, 129 F.4th at 112.

Federal Tribunal of the Federative Republic of Brazil." ECF No. 38 at 1. The "Parties" section describes him as "a member of the STF, the highest court in Brazil," *id*. ¶ 8, and "an official of the Brazilian government," *id*. ¶ 12, using his official title throughout. That makes this an official capacity lawsuit. *Hussein*, 129 F.4th at 114; *Li v. Li*, No. 20-2008, 2023 U.S. Dist. LEXIS 60329, at \*10 (D.D.C. Apr. 5, 2023) (where an "official is discussed solely in his capacity as" a government official, the sovereign "is the real party in interest").

*Second*, even if Plaintiffs had purported to sue Justice Moraes in his personal capacity (they did not), Brazil would still be the real party in interest. The Court must "look to the substance of the liability claim." *Hussein*, 129 F.4th at 114. That is because, while "[a] plaintiff might be adamant that he has sued an official in his personal capacity and might have framed the complaint accordingly," the "determination is not for the plaintiff to make," as "the real-party-in-interest exception is designed to avoid 'artful pleading' by plaintiffs that might make the FSIA's governmental immunity provisions 'optional.'" *Id.* at 114 (quoting *Samantar*, 560 U.S. at 324). "To prevent such a result, a court must determine whether the substance of the plaintiff's liability claims is better understood as a personal liability claim based on personal acts, or as an official capacity suit in which the state is the real actor and accordingly is the real party in interest." *Id.*

Here, the claims concern official judicial acts. Justice Moraes is not being sued for causing a car accident while driving to the store. He is being sued because Plaintiffs disagree with the content of his judicial orders and the manner in which he served

them.  *See* ECF No. 38 at 1-2; ECF No. 46 at 2-4.  No private party can do these things; they can only be performed by a judge.  They are thus "'official' state action" because they constitute "conduct that is by nature distinctly sovereign and cannot be undertaken by a private individual or entity."  *Nnaka v. Fed. Republic of Nigeria*, 238 F. Supp. 3d 17, 32 (D.D.C. 2017) (internal quotations omitted).

This is confirmed by the statements of the U.S. Government that Plaintiffs seek to rely upon.  For example, Exhibit B to Plaintiffs' opposition, a statement by the Department of the Treasury, refers to "Brazilian Supreme Federal Court (STF) justice Alexandre de Moraes" and accepts his "issu[ing] orders to U.S. social media companies" as being "[j]udicial" in nature.  ECF No. 83-3 (emphasis added).  *See also* Exhibit C to Plaintiff's opposition, ECF No. 83-4 (describing "Brazilian Supreme Court Justice Alexandre de Moraes" as exercising "his authority" as a judge).  Plaintiffs cannot simultaneously rely on these exhibits, which identify Justice Moraes solely by reference to his official title and institutional role, and maintain that they are suing him in his individual, personal capacity.

Plaintiffs also cannot escape the official nature of Justice Moraes' conduct by arguing his actions were *ultra vires*.  ECF No. 83 at 6.  Plaintiffs do not dispute that Brazilian law allows the President of the Supreme Federal Court to conduct inquires and issue orders in pursuance thereof; nor do they contest that he lawfully delegated that authority to Justice Moraes.  The fact that a five-member Supreme Federal Court panel affirmed Justice Moraes' orders in March 2025, *see* ECF No. 66 at 3; ECF No.

3

67-3 at 30, is likewise uncontested.[2]  Nor do Plaintiffs dispute that Brazil's highest judicial authorities confirmed that Justice Moraes acted lawfully.  *See* ECF No. 66 at 6-7.  As the President of the Supreme Federal Court wrote in June 2026, this lawsuit concerns "decisions made by [Justice Moraes] in the strict exercise of his judicial function and endorsed by the competent joint board of this Supreme Court."  ECF No. 67-5 at 3.  *See Belhas v. Moshe Ya'Alon*, 515 F.3d 1279, 1283 (D.C. Cir. 2008) (courts may look to statements authorizing or ratifying acts to determine official capacity).  And Plaintiffs are likewise mistaken in arguing that the U.S. "DOJ suggested the orders are *ultra vires*," ECF No. 83 at 5 (citing ECF No. 46 ¶ 16).  Nothing in the DOJ's letter, or Brazil's response thereto, suggests that either the U.S. or Brazil considered Justice Moraes' acts to be *ultra vires*; both reflect the understanding that he was acting in his official judicial capacity.  *See* ECF No. 46-2; ECF No. 83-1.  Put simply, "[t]his is not a case … where an official went rogue" or "acted patently beyond his legal authority," *Hussein*, 129 F.4th at 118.

Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), does not suggest otherwise.  It was not concerned with foreign government officials, a context where "mere allegations of illegality do not serve to render an action unofficial."  *Giraldo v. Drummond Co.*, 808 F. Supp. 2d 247, 249-50 (D.D.C. 2011).  *See also Comparelli     v.     Bolivarian     Republic     of     Venezuela*,     No.     14-24414-CIV-

---

[2] With respect to the later July 11, 2025 order, ECF No. 83 at 9, Plaintiffs do not allege it was made on a different legal basis than the others, *see generally* ECF No. 46.

WILLIAMS/MCALILEY, 2021 U.S. Dist. LEXIS 152554, at \*6 (S.D. Fla. Aug. 13, 2021) (foreign officials are immune "even if [their] acts were unlawful").  Further, while *Larson*'s "*ultra vires* exception applies only to requests for injunctive relief," *Hussein*, 129 F.4th at 119, Plaintiffs also seek damages and declaratory relief, ECF No. 38 at 59-60; ECF No. 46 at 7.[3]

*Third*, "courts consider the relief sought by the plaintiff and the party targeted for the requested relief." *Hussein*, 129 F.4th at 115.  Again, the Amended Complaint confirms Brazil is the real party in interest.  With respect to the damages claim, nothing in the Amended Complaint even hints that Justice Moraes would have to pay damages personally and Plaintiffs cannot now self-servingly read that intention into their own pleading as a way to avoid application of the FSIA.  *See Hussein*, 129 F.4th 114 (quoting *Samantar*, 560 U.S. at 324) (warning of "artful pleading").  As for the injunctive relief, Plaintiffs seek to enjoin future decisions of Justice Moraes and enforcement of his orders.  ECF No. 38 at 59-60.  This would restrain the Brazilian judiciary, underscoring Brazil's status as the real party in interest.  Plaintiffs seek to avoid the import of their injunctive relief request by arguing they seek to enjoin the orders' U.S. "domestic effect."  ECF No. 83 at 10.  But no attempt "to domesticate" the orders has been made.  ECF No. 26 at 2.  Thus, insofar that the claims turn on U.S. enforcement

---

[3] Plaintiffs' reliance on *Phaneuf v. Republic of Indonesia*, ECF No. 83 at 6, is misplaced.  It does not address whether a sovereign is a real party in interest in a suit against a foreign official.  106 F.3d 302 (9th Cir. 1997).  It also predates *Samantar*, which "explicitly rejected" the "mode of analysis" concerning foreign sovereign immunity, *Hussein*, 129 F.4th at 120 n.16, that was employed in *Phaneuf, see Phaneuf*, 106 F.3d at 306-307.

of the orders, the claim is not ripe. *Id*. Regardless, there is nothing unusual about a court issuing an order to a party located outside its jurisdiction; the summons issued in this very case—served by email, no less—is a good example. It hardly qualifies as *ultra vires* conduct, much less grounds for personal lawsuits against judicial officers.

## II. The Case Must be Dismissed for Lack of Jurisdiction

Plaintiffs do not contest that, if Brazil is the real party in interest, dismissal is required because the Amended Complaint does not invoke any of the FSIA's exceptions to immunity. Plaintiffs thus ask to amend the complaint yet again. ECF No. 83 at 15. The request should be denied. Plaintiffs cannot credibly argue they "had no reason to plead around FSIA defenses belonging to a nonparty," *id*. at 16, when the Complaint, Amended Complaint, and Supplemental Pleading all attempted to do just that by suing Justice Moraes in the first place, alleging that "[w]hile foreign states and their agencies and instrumentalities typically enjoy immunity under the [FSIA], the FSIA does not apply to an official purportedly 'acting on behalf of the foreign state.'" ECF No. 1 ¶ 12 (quoting *Samantar*, 560 U.S. at 319). In other words, Plaintiffs have already done precisely what the Supreme Court cautioned against: use "artful pleading" to try to "make the [FSIA] optional." *Samantar*, 560 U.S. at 324.

The Court should refuse further attempts at artfulness. Plaintiffs do not identify what FSIA immunity exception they would assert or facts that could support one. That is unsurprising. None of the FSIA's exceptions reaches a foreign sovereign's judicial acts. While leave to amend may be given "when justice so requires," Fed. R. Civ. P. 15(a)(2), that is not the case here. Amendment would be futile and pursued to

prolong the case. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Moreover, it would contravene sovereign immunity's "basic objective" of "free[ing] a foreign sovereign from suit," *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017), by needlessly subjecting Brazil to further litigation in the absence of jurisdiction. *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1311 (11th Cir. 2009) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation.") (internal quotation omitted). Leave to amend must therefore be denied.

## CONCLUSION

The Court should grant Brazil's motion to dismiss with prejudice.

Dated: August 11, 2026                Respectfully submitted,

/s/ Andrew B. Loewenstein
Andrew B. Loewenstein (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: 617-832-1000
aloewens@foleyhoag.com
*Lead Counsel for Federative Republic of Brazil*

Nicholas M. Renzler (*pro hac vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas
25th Floor
New York, NY 10019
Tel: 212-812-0400
nrenzler@foleyhoag.com

Madeleine K. Rodriguez (0115796)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: 617-832-1000
mrodriguez@foleyhoag.com
*Counsel for Federative Republic of Brazil*