FILED - USDC - FLMD - FTM
AUG 14 2026 PM1:54

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# Fort Myers ~~TAMPA~~ DIVISION

RUMBLE INC. and TRUMP MEDIA & TECHNOLOGY GROUP CORP.,

Case No. 8:25-cv-00411-MSS-AAS

Plaintiffs,

v.

ALEXANDRE DE MORAES, Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil,

Defendant.
_________________________________/

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL AMICUS CURIAE MEMORANDUM ADDRESSING NEW MATTERS RAISED IN ECF NO. 89

COMES NOW Rogerio Chaves Scotton ("Movant" or "Amicus"), appearing individually and pro se, and respectfully moves for limited leave to file the Supplemental Amicus Curiae Memorandum attached as Exhibit A. The proposed memorandum addresses discrete arguments and authorities newly emphasized in the Federative Republic of Brazil's Reply in Support of Motion to Dismiss, ECF No. 89, filed August 11, 2026. It does not seek party status, discovery, oral argument, or relief different from that requested by Plaintiffs.

# I. PROCEDURAL POSTURE AND PURPOSE OF THE REQUEST

1. This Court previously denied Movant's requests for amicus participation without prejudice while service on Defendant had not been completed and directed Movant, after service, to confer with the Parties or make a good-faith effort to do so and advise the Court of their positions. See ECF Nos. 51, 62.

2. The Court later authorized alternative service under Federal Rule of Civil Procedure 4(f)(3), Plaintiffs filed proof of service, Brazil intervened, and Brazil moved to dismiss. See ECF Nos. 60, 63, 66, 73.

3. Brazil has now filed its Reply, ECF No. 89. The Reply materially sharpens several issues that were not previously framed in the same manner, including: (a) reliance on Hussein v. Maait, 129 F.4th 99 (2d Cir. 2025), as a real-party-in-interest framework; (b) reliance on Brazilian-law propositions and institutional ratification to characterize Defendant's conduct as official; (c) the assertion that no attempt to domesticate the challenged orders has occurred; (d) an analogy between the challenged directives and this Court's Rule 4(f)(3) email service; and (e) a request for dismissal with prejudice based in part on the present pleading's capacity and remedial language. ECF No. 89 at 2-8.

4. The proposed memorandum is deliberately narrow. It does not accuse Defendant of criminal conduct, does not ask this Court to decide Brazilian political questions, and does not ask this Court to invalidate any Brazilian

judicial order within Brazil. It addresses only whether the propositions in ECF No. 89 necessarily require categorical dismissal with prejudice under United States law.

## II. WHY THE SUPPLEMENTAL MEMORANDUM MAY ASSIST THE COURT

5. Federal Rule of Civil Procedure 44.1 and Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co., 585 U.S. 33, 42-46 (2018), require a federal court to determine foreign law as a question of law. A foreign sovereign's submission merits respectful consideration, but official advocacy does not automatically receive conclusive effect. The significance of actual foreign judicial decisions, official statements, statutory text, and other sources must be assessed by the Court in determining the content and scope of foreign law.[1]

6. Samantar v. Yousuf, 560 U.S. 305, 319, 324-25 (2010), confirms that the FSIA does not itself govern an individual foreign official merely because the challenged conduct was undertaken under color of office. ECF No. 89 responds by invoking Hussein and arguing that Brazil is substantively the real party in interest. The proposed memorandum accepts that substance

1 See Animal Science Prods., Inc. v. Hebei Welcome Pharm. Co., 585 U.S. 33, 42-46 (2018) (a foreign government's submission concerning its own law is entitled to respectful consideration but is not binding on a federal court determining foreign law under Rule 44.1).

controls, but explains why the analysis should be claim-specific and remedy-specific rather than categorical.

7. W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., International, 493 U.S. 400, 405-10 (1990), supplies a limiting principle: a United States court does not trigger the act-of-state doctrine merely because adjudication touches foreign sovereign conduct; the critical question is whether the court must declare invalid an official foreign act performed within the foreign sovereign's territory. That distinction bears directly on relief limited to domestic legal effect in the United States.

8. Finally, ECF No. 89 itself states that no effort to domesticate the challenged orders has been made. ECF No. 89 at 6. That assertion may bear on ripeness, but it also demonstrates why a ruling concerning domestic U.S. legal effect can be analytically distinct from invalidating a Brazilian order within Brazil.

## III. RELIEF REQUESTED

WHEREFORE, Movant respectfully requests that the Court grant leave to file the attached Supplemental Amicus Curiae Memorandum and consider it solely to the extent the Court finds the memorandum useful in resolving the pending Motion to Dismiss and Brazil's Reply, ECF No. 89.

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RUMBLE INC. and TRUMP MEDIA & TECHNOLOGY GROUP CORP.,

Case No. 8:25-cv-00411-MSS-AAS

Plaintiffs,

v.

ALEXANDRE DE MORAES, Justice of the Supreme Federal Tribunal of the Federative Republic of Brazil,

Defendant.
_________________________________/

## SUPPLEMENTAL AMICUS CURIAE MEMORANDUM ADDRESSING ECF NO. 89

## I. INTRODUCTION

Brazil's Reply asks the Court to move from the official character of Defendant's office to categorical FSIA dismissal in a single step. ECF No. 89 at 2-7. The governing authorities require a more precise analysis. The Court may assume for purposes of this motion that Defendant used Brazilian judicial authority and that the challenged orders remain valid within Brazil. Even with those assumptions, two separate questions remain: whether Brazil is the real party in interest as to each claim and form of relief, and what

compulsory legal effect, if any, an undomesticated foreign judicial directive possesses within the United States.

The distinction is not semantic. Samantar separates the foreign state from the individual official for FSIA purposes. Rule 44.1 assigns the determination of foreign law to the federal court. Kirkpatrick distinguishes adjudication that invalidates a foreign sovereign act within the foreign sovereign's territory from adjudication that does not. And ECF No. 89 acknowledges that the challenged orders were never domesticated in the United States. Those principles together preclude treating the words "judicial order" as the end of the jurisdictional inquiry.

## II. ECF NO. 89 MAKES THE RULE 44.1 QUESTION MORE IMPORTANT, NOT LESS

ECF No. 89 relies on a chain of propositions about Brazilian law: that Brazilian law authorized the relevant inquiry; that authority was delegated to Defendant; that a five-member STF panel affirmed the orders; and that senior Brazilian judicial authorities later characterized the conduct as falling within Defendant's judicial function. ECF No. 89 at 4-5. Those sources are substantial and must be considered. But the legal effect and scope of foreign law remain questions for this Court under Rule 44.1.

Rule 44.1 provides that, in determining foreign law, a federal court may consider any relevant material or source, whether or not submitted by a party,

and that the determination is treated as a ruling on a question of law. In Animal Science, the Supreme Court unanimously rejected a rule that would bind a federal court to a foreign government's reasonable characterization of its own law. 585 U.S. at 42-46. The Court held that a foreign government's submission warrants respectful consideration, while the weight given depends on context, support, authority, consistency, and the other relevant sources before the court. Id.

That rule does not authorize Amicus to disregard STF decisions or substitute political disagreement for foreign-law analysis. To the contrary, actual STF decisions may be highly probative sources. The point is narrower: ECF No. 89 cannot make the Rule 44.1 determination by advocacy alone. If the scope of Brazilian judicial authority is material to the immunity analysis, this Court must identify what the Brazilian sources actually establish at the level of specificity relevant here - including whether they address merely the power to issue orders within Brazilian proceedings or also the asserted cross-border legal consequences of directives sent to U.S. companies.

The distinction matters because general judicial authority to conduct an inquiry does not, by itself, answer a different territorial question: what legal effect an order issued in that inquiry has in another sovereign's territory. Rule 44.1 therefore should precede, not be swallowed by, the real-party-in-interest conclusion to the extent Brazilian law is used as a premise of that conclusion.

## III. HUSSEIN IS PERSUASIVE AUTHORITY, BUT ITS FACTS AND REMEDIAL POSTURE ARE MATERIALLY DIFFERENT

Brazil relies heavily on Hussein v. Maait, 129 F.4th 99 (2d Cir. 2025). Hussein is a real and important post-Samantar decision, but it is persuasive rather than controlling authority in the Eleventh Circuit. More importantly, Hussein involved an expressly official-capacity defendant - "Dr. Mohamed Ahmed Maait, in his official capacity as Minister of Finance of the Arab Republic of Egypt" - and a suit seeking enforcement of an Egyptian judgment and related decree whose substantive obligation ran against Egypt. 129 F.4th at 104-06, 113-20.[2]

Hussein instructs courts to look beyond labels and examine substance, including how the defendant is sued, the substance of the liability theory, and the relief sought. Id. at 113-15. That framework does not compel categorical dismissal here; it identifies the questions the Court must answer. If a claim would command Brazil, reach Brazilian sovereign property, or require payment from the Brazilian treasury, the real-party-in-interest argument is powerful. If another claim seeks legally available personal relief from the individual defendant or a declaration limited to whether a foreign directive has

---

2 Hussein v. Maait, 129 F.4th 99, 113-15 (2d Cir. 2025). Hussein is persuasive, not controlling, authority in the Eleventh Circuit; its official-capacity and remedial posture should be compared to the pleading and relief actually at issue here.

domestic compulsory effect in the United States, the substantive analysis is different.

ECF No. 89 emphasizes that the present caption identifies Defendant as an STF Justice and argues that the pleading does not expressly say "individual capacity." ECF No. 89 at 2-3, 6. If that pleading detail is materially important under Brazil's own Hussein analysis, it also bears on Brazil's separate assertion that amendment would necessarily be futile. A defect consisting of capacity language or overbroad remedial wording is not logically identical to a legal rule that no narrower claim could ever proceed.

## IV. SAMANTAR DOES NOT PERMIT THE INDIVIDUAL-OFFICIAL QUESTION TO DISAPPEAR MERELY BECAUSE BRAZIL INTERVENED

Samantar held that the FSIA does not itself govern the immunity of an individual foreign official. 560 U.S. at 319, 325. The Court recognized that common-law immunity may remain available and that, in some circumstances, the foreign state can be the real party in interest. Id. at 324-25. But Samantar did not adopt a categorical rule that every claim arising from an official act is automatically an FSIA claim against the foreign state.

Brazil's intervention is therefore highly relevant, but not self-executing. Intervention permits Brazil to defend sovereign interests; it does not by itself rewrite every claim or remedy as one against Brazil. The Court still must

examine what rule of law the plaintiff asks the Court to enforce and against whom the judgment would actually operate.

This is why the relief matters. A federal order directing the STF how to conduct Brazilian proceedings raises materially different sovereign concerns from a declaration concerning the domestic enforceability of a foreign directive in the United States. Treating those forms of relief as legally identical would convert the real-party-in-interest doctrine from a substance inquiry into the categorical label that Hussein itself cautions against.

## V. ECF NO. 89'S EMAIL-SUMMONS ANALOGY CONFLATES NOTICE WITH SUBSTANTIVE COMPULSION

ECF No. 89 argues that there is "nothing unusual" about a court issuing an order to a party outside its jurisdiction and points to the summons in this case, which this Court authorized to be served by email under Rule 4(f)(3). ECF No. 89 at 6. The analogy proves too much because it treats the common medium - email - as though it determined the legal character of the transmitted instrument.[3]

A summons serves notice of a U.S. judicial proceeding and is transmitted under authority supplied by United States procedural law and an order of a

3 Brazil's Reply invokes this Court's authorization of service by email as an analogy. See ECF No. 89 at 6. The analogy concerns the method of transmission, not whether the transmitted instrument merely gives notice or instead commands substantive conduct.

United States court. Rule 4(f)(3) regulates the manner of service. It does not itself command the foreign recipient to block third-party accounts, terminate payments, disclose information, or alter platform conduct.

The challenged directives, as pleaded by Plaintiffs, demanded substantive action by U.S. companies and were accompanied by threatened consequences for noncompliance. Whether those directives were validly issued under Brazilian law is one question. Whether they themselves created compulsory obligations enforceable in the United States is another. Service of notice and substantive enforcement are not interchangeable simply because both may be transmitted electronically.

The distinction is especially important because this Court's Rule 4(f)(3) order was itself an exercise of U.S. judicial authority determining how process in a U.S. case could be served. That order does not establish a general principle that any foreign sovereign command sent by email automatically has compulsory effect inside the United States.

## VI. BRAZIL'S OWN NON-DOMESTICATION STATEMENT SUPPORTS A NARROW TERRITORIAL ANALYSIS

ECF No. 89 states that "no attempt "to domesticate" the orders has been made" and argues that, to the extent Plaintiffs challenge U.S. enforcement, the claim is unripe. ECF No. 89 at 6. Amicus does not ask the Court to resolve the separate Article III ripeness question through an amicus filing. But

Brazil's premise has an important jurisdictional consequence: it confirms that the Court can distinguish validity of the Brazilian orders from their domestic legal effect in the United States.[4]

If no U.S. recognition or domestication has occurred, a declaration concerning what those directives themselves require of a U.S. company need not declare the Brazilian orders void in Brazil. The Court may leave the Brazilian orders entirely untouched as Brazilian judicial acts while determining what legal consequences arise under U.S. law from their transmission to U.S.-located entities and interests.

That distinction also narrows the comity problem. The United States need not tell Brazil what its judges may order inside Brazil. Brazil need not tell a United States court what legal force a foreign directive has inside the United States. Reciprocal sovereignty is preserved by keeping those questions separate.

## VII. KIRKPATRICK PROVIDES THE SUPREME COURT'S LIMITING PRINCIPLE

W.S. Kirkpatrick is directly useful because it rejects the proposition that the mere presence of foreign sovereign conduct requires judicial abstention.

---

4 ECF No. 89 at 6 states that no attempt to domesticate the challenged orders has been made. Amicus cites that statement only for the territorial distinction addressed here, not as a concession by Brazil on the merits.

493 U.S. at 405-10. The Supreme Court explained that act-of-state issues arise when a U.S. court must decide the effect or validity of an official foreign sovereign act performed within the foreign sovereign's territory. Id. at 405, 409-10. It was not enough that adjudication might require findings reflecting poorly on foreign officials or implicate foreign relations. Id. at 408-10.[5]

The same limiting principle can prevent overbreadth here. This Court need not declare Defendant's orders invalid as a matter of Brazilian law. It may assume their Brazilian validity and ask the narrower U.S.-law question: what compulsory domestic effect, if any, do those directives have against U.S.-located persons, companies, accounts, data, payments, or contractual relationships absent a U.S. basis for recognition or enforcement?

Framed that way, the Court does not sit as an appellate court over the STF. It determines the legal effect of foreign governmental action within the territorial jurisdiction of the United States. That is precisely the type of limiting formulation that can respect foreign sovereignty without surrendering domestic judicial authority.

---

5 See W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 405-10 (1990) (the act-of-state doctrine turns on whether adjudication requires a U.S. court to declare invalid an official act of a foreign sovereign performed within its own territory).

## VIII. THE COURT SHOULD SEPARATE CLAIMS AND REMEDIES BEFORE DECIDING THAT BRAZIL IS THE REAL PARTY IN INTEREST FOR ALL PURPOSES

ECF No. 89 argues that the requested injunction would restrain future Brazilian judicial action and that the damages allegations do not clearly state that Defendant would pay personally. ECF No. 89 at 6. Those are serious points, but they support careful remedial analysis rather than an automatic conclusion that every claim stands on the same footing.

At minimum, the Court can distinguish among relief that would: (1) command Brazil or the STF; (2) invalidate a Brazilian order within Brazil; (3) execute against Brazilian sovereign property; (4) impose legally available personal liability on Defendant; or (5) determine only whether a foreign directive has compulsory legal effect inside the United States. The first three categories implicate Brazil directly in a way the fifth does not necessarily do.

That claim-by-claim and remedy-by-remedy approach is faithful to Samantar's separation of the state from the individual and to Hussein's insistence on substance rather than labels. It also avoids deciding more than necessary. If one form of relief impermissibly operates against Brazil, the Court can address that relief without assuming that every narrower form of relief must rise or fall with it.

## IX. RULE 19 DOES NOT ELIMINATE THE NEED TO DEFINE THE RELIEF PRECISELY

Brazil also invokes Rule 19 and Samantar's observation that a foreign state may in some circumstances be a required party even if the individual official is not immune. ECF No. 89 at 2 n.1. But Rule 19 itself requires analysis of the interest claimed and whether disposing of the action in the person's absence may impair that interest or expose an existing party to inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B).[6]

If relief were framed to restrain the STF or invalidate Brazilian orders within Brazil, Brazil's claimed interest would be direct. If relief is limited to the domestic U.S. effect of foreign directives, the impairment analysis is materially different. The Court therefore should define the relief first rather than use Rule 19 to assume the very proposition in dispute - that every form of relief necessarily operates against Brazil.

## X. DISMISSAL WITH PREJUDICE IS NOT THE ONLY AVAILABLE DISPOSITION

Brazil asks for dismissal with prejudice and argues amendment would be futile. ECF No. 89 at 7-8. Yet Brazil simultaneously relies on the present complaint's failure expressly to designate Defendant as sued in an individual

6 See Samantar v. Yousuf, 560 U.S. 305, 324-25 (2010) (recognizing that a foreign state may, in appropriate circumstances, be a required party under Rule 19 even where the individual official's common-law immunity remains a separate question); ECF No. 89 at 2 n.1.

capacity and on the breadth of the present injunctive allegations. ECF No. 89 at 2-3, 6. Those contentions identify pleading and remedial issues that may be susceptible to clarification or narrowing.

Rule 15(a)(2) directs courts to freely give leave to amend when justice so requires. Foman v. Davis, 371 U.S. 178, 182 (1962), recognizes futility as a basis for denial, but futility means that the proposed amendment still could not survive the applicable legal rule. The Eleventh Circuit likewise recognizes that where a more carefully drafted pleading may state a viable claim, dismissal with prejudice is a severe disposition. See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1132-33 (11th Cir. 2019).[7]

Amicus does not suggest that Plaintiffs are automatically entitled to unlimited amendments or that a capacity label alone defeats immunity. The narrower point is that if Brazil makes capacity and remedial formulation central to its real-party-in-interest argument, the Court should not simultaneously assume that clarification of those matters is categorically irrelevant without examining what a narrowed pleading would actually ask the Court to decide.

---

7 Foman v. Davis, 371 U.S. 178, 182 (1962), identifies futility among the recognized reasons for denying leave to amend. Whether amendment is futile depends on the legal sufficiency of the proposed amended claim, not merely on defects in the existing pleading.

A measured disposition is available: deny categorical dismissal with prejudice, require or permit clarification of capacity and relief if necessary, and then determine immunity and real-party-in-interest issues against the actual claims and remedies that remain. That course resolves the jurisdictional questions on substance rather than on avoidable ambiguity.

## XI. THE COURT NEED NOT RESOLVE MOTIVE, POLITICS, OR CRIMINALITY

Nothing in this memorandum requires a finding that Defendant acted from ego, partisan hostility, personal animus, or criminal intent. Nor does Amicus contend here that the communications constitute wire fraud, extortion, conspiracy, or another federal crime. Those characterizations would introduce factual and legal elements unnecessary to the present jurisdictional issue.

The Court can decide the present questions from objective legal features: the identity and location of the recipient; the nature of the conduct demanded; where compliance would occur; the location and control of accounts, data, payments, or contractual relationships; whether a U.S. recognition or enforcement mechanism was invoked; and against whom each requested remedy would legally operate.

That approach also answers the concern that this litigation could become a referendum on Brazilian politics. It need not. The Court can respect the

STF's authority in Brazil while deciding only the legal consequences that United States law assigns within United States territory.

## XII. ECF NO. 89 DOES NOT RESOLVE THE PRIORLY IDENTIFIED RULE 44.1 AND TERRITORIAL QUESTIONS

Brazil's Reply is directed to Plaintiffs' opposition, and Amicus does not contend that Brazil's failure to answer every prior amicus argument constitutes waiver or concession. The relevant point is narrower: ECF No. 89 does not eliminate the Rule 44.1 or territorial questions. Instead, by relying more heavily on Brazilian-law propositions, institutional ratification, non-domestication, and the email-summons analogy, the Reply makes those questions more concrete.

Accordingly, the Court should not treat the absence of a party response to prior amicus submissions as dispositive. It should consider the underlying legal issues on their merits to the extent they assist resolution of the pending dismissal motion. Those issues are now squarely tied to propositions advanced in ECF No. 89 itself.

## XIII. CONCLUSION

Brazil has presented a serious immunity argument, but ECF No. 89 does not establish that every material claim and remedy must be treated as a suit against Brazil and dismissed with prejudice. Rule 44.1 requires the Court to determine any material issue of Brazilian law as a question of law. Samantar

does not make an individual official identical to the foreign state for every purpose. Hussein calls for a substantive real-party-in-interest analysis rather than a title-based shortcut. Kirkpatrick allows adjudication that does not require invalidating a foreign sovereign act within the foreign sovereign's own territory. And Brazil's acknowledgment that the orders were never domesticated demonstrates that their Brazilian validity can be separated from their asserted compulsory effect in the United States.

For those reasons, Amicus respectfully submits that the Court should deny categorical dismissal with prejudice, conduct a claim-specific and remedy-specific analysis, and, if the Court identifies curable defects in capacity allegations or the formulation of relief, permit appropriate clarification or amendment before extinguishing the action.

Respectfully submitted,

Rogerio Chaves Scotton, Pro Se
160 W. Camino Real, Suite 102
Boca Raton, Florida 33432
Telephone: (561) 878-9001
Email: rs@legalhelp4y.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 14, 2026, a true and correct copy of the foregoing Motion for Leave and proposed Supplemental Amicus Curiae Memorandum was submitted for filing with the United States District Court for the Middle District of Florida, Tampa Division, via U.S. Postal Service First-Class Mail, and was served by electronic mail upon all counsel of record at their email addresses of record.

Rogerio Chaves Scotton