FILED - USDC - FLMD - FTM
SEP 2 2026 AM10:26

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUMBLE INC. and TRUMP MEDIA
&
TECHNOLOGY GROUP CORP.,

Plaintiffs,

Case No. 8:25-cv-00411-MSS-AAS

v.

ALEXANDRE DE MORAES, Justice
of the
Supreme Federal Tribunal of the
Federative
Republic of Brazil,

Defendant.
________________________________/

# MOVANT ROGERIO CHAVES SCOTTON'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL AMICUS CURIAE MEMORANDUM REGARDING NEWLY DISCLOSED BRAZILIAN FEDERAL POLICE MATERIAL, EXTRATERRITORIAL COERCION OF U.S. PLATFORMS, AND THE NEED FOR INDEPENDENT OFFICIAL-ACT REVIEW

Movant Rogerio Chaves Scotton respectfully moves for leave to file the attached Supplemental Amicus Curiae Memorandum. The proposed memorandum addresses material developments arising after prior amicus submissions, including newly reported investigative material generated by

Brazil's Federal Police in the Banco Master investigation, the United States Government's prior formal findings concerning Defendant Alexandre de Moraes's conduct toward U.S. persons and U.S. social-media companies, and the documented 2024 suspension of X in Brazil and collection of substantial monetary penalties as conditions of reinstatement.

The proposed memorandum does not ask this Court to determine whether Defendant committed any criminal offense in Brazil or the United States. Nor does it ask this Court to adjudicate disputed allegations appearing in press reports. Its narrower purpose is to assist the Court on an issue already central to the pending jurisdictional and immunity dispute: whether the particular conduct challenged in this action is properly characterized as sovereign judicial conduct merely because it was undertaken by a foreign judicial officer, or whether the Court must independently examine the nature, purpose, territorial reach, and real party in interest associated with each challenged act.

The new developments are particularly relevant because the Federative Republic of Brazil has intervened and has asked the Court to treat Defendant's challenged conduct as official sovereign activity for purposes of immunity and the real-party-in-interest analysis. See Dkt. 73 (granting intervention and deferring ruling on Brazil's motion to dismiss). The newly

disclosed Brazilian material, while not itself proof of criminal liability, reinforces the need for an act-by-act inquiry rather than categorical deference based on office or title.

Movant further requests that the Court consider the attached memorandum under Federal Rule of Civil Procedure 44.1 to the extent Brazilian law and institutional practice bear on the characterization of the challenged conduct. Rule 44.1 permits a federal court determining foreign law to consider any relevant material or source, whether or not submitted by a party and whether or not admissible under the Federal Rules of Evidence. See Fed. R. Civ. P. 44.1; ***Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co., 585 U.S. 33, 42-46 (2018)***.

Finally, Movant respectfully preserves a distinct point concerning federal law enforcement. This civil Court need not decide whether any conduct described in the record satisfies the elements of a federal criminal statute. Those determinations are committed principally to the Executive Branch. If, however, the Court concludes that the record discloses conduct warranting independent federal review, Movant respectfully requests that the Court exercise its discretion to transmit the filing and identified materials to the United States Attorney for the Middle District of Florida or the Department of Justice for whatever review those authorities deem appropriate. This

alternative request is expressly subordinate to the principal request for leave to file the supplemental amicus memorandum.

## WHEREFORE

Movant respectfully requests that the Court (1) grant leave to file the attached Supplemental Amicus Curiae Memorandum; (2) consider the newly identified materials solely for the limited purposes stated in the memorandum; and (3) grant such other relief as the Court deems just and appropriate.

Respectfully submitted,

Rogerio Chaves Scotton
160 W Camino Real, # 102
Boca Raton, FL 33432
Email: rs@legalhelp4y.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 2, 2026, a true and correct copy of the foregoing was served by U.S. Mail and/or electronic mail upon counsel and parties of record at their addresses reflected on the docket.

# PROPOSED SUPPLEMENTAL AMICUS CURIAE MEMORANDUM
# NEW BRAZILIAN INVESTIGATIVE MATERIAL AND THE UNITED STATES GOVERNMENT'S OWN FINDINGS REINFORCE THAT DEFENDANT'S CONDUCT MUST BE EXAMINED ACT-BY-ACT, NOT IMMUNIZED BY TITLE

## I. INTRODUCTION

This case presents a narrow but consequential question of United States law: whether conduct directed by a foreign judicial officer at U.S. companies, U.S.-based speakers, and U.S.-located operations must be treated categorically as sovereign conduct because the actor holds judicial office, or whether the Court must examine the actual nature and territorial operation of the challenged acts. ***Samantar v. Yousuf, 560 U.S. 305, 322-25 (2010)***, rejects the premise that a foreign official is automatically the foreign state for every purpose. The real-party-in-interest inquiry and any common-law immunity analysis therefore require attention to what the defendant actually did, whom the conduct targeted, what relief is sought, and whether the conduct is properly attributable to the foreign sovereign.

Developments arising after the prior amicus submissions reinforce the need for that independent inquiry. On September 1, 2026, multiple Brazilian news organizations reported that Brazil's Federal Police had generated investigative material from devices associated with former Banco Master

owner Daniel Vorcaro identifying repeated contacts with Defendant Alexandre de Moraes and requests by Vorcaro that senior Brazilian authorities be approached concerning investigative measures. Folha de S.Paulo reports that portions of the material are attributed directly to Defendant while other portions reflect the Federal Police's suspicion as to the identity of the interlocutor; it further reports that the disclosed documents do not establish that Vorcaro's requested interventions were actually carried out. The Court therefore need not - and should not - decide criminal culpability from those reports. Their relevance is narrower: they demonstrate an active institutional controversy inside Brazil over the boundary between Defendant's public office and allegedly private or extra-judicial relationships.

That controversy does not arise in a vacuum. The United States Government previously made formal findings that Defendant targeted U.S. persons and U.S. social-media platforms through extraterritorial orders and censorship measures. On July 30, 2025, the Department of the Treasury, acting under Executive Order 13818, designated Defendant under the Global Magnitsky program and stated that he had directly issued orders to U.S. social-media companies to block or remove accounts, including accounts of U.S. persons, and had engaged in serious human-rights abuse. Treasury later removed Defendant from the sanctions list on December 12, 2025. The

removal means the designation is no longer operative; it does not change the historical fact that the Executive Branch formally articulated those findings in July 2025. Both events should be stated candidly.

## II. THE X PROCEEDINGS SHOW THE CONCRETE ECONOMIC AND EXTRATERRITORIAL CONSEQUENCES OF DEFENDANT'S ORDERS

The X proceedings provide a documented example of the scale of Defendant's coercive authority over an American technology company. On August 30, 2024, Defendant ordered the immediate and complete suspension of X throughout Brazil until court orders were obeyed, monetary penalties were paid, and a legal representative was appointed. The STF's First Panel later unanimously ratified the nationwide suspension on September 2, 2024. Those facts are established by the STF's own public releases and should therefore be presented without exaggeration.

The financial consequences were substantial. On September 13, 2024, the STF reported that R$18.35 million blocked from accounts of X Brasil and Starlink Brazil was transferred to the Union in satisfaction of monetary penalties. On September 27, 2024, Defendant ruled that X could resume operations only after satisfying additional payment conditions, including a R$10 million penalty and a separate R$300,000 penalty imposed on its legal representative. On October 1, 2024, the STF reported that X would pay total

outstanding fines of approximately R$28.6 million using funds from abroad. On October 4, 2024, X informed the STF that it had paid the fines.

The record also includes X's public allegation that Defendant threatened its Brazilian legal representative with arrest and a daily fine if the company did not comply with content-removal orders. Reuters reported that X published an image of an order it attributed to Defendant providing for a daily R$20,000 fine and an arrest decree against the representative upon noncompliance. The allegation should be described as X's allegation unless and until the underlying order is authenticated in this record. Even so, it is directly relevant to the coercive mechanism that Plaintiffs allege was later deployed against Rumble.

These facts do not, standing alone, establish wire fraud, extortion, or any other federal crime. A federal criminal offense requires proof of each statutory element, including any required intent, property objective, domestic nexus, and jurisdictional predicate. But the X record does demonstrate that the challenged model of enforcement can impose concrete economic consequences on U.S.-connected companies, compel transfers of money, and condition market access on compliance with orders whose effects may reach beyond Brazil. That is relevant to the Court's determination of whether

the conduct challenged here is properly insulated by a categorical 'official act' label.

## III. THE UNITED STATES GOVERNMENT HAS ALREADY IDENTIFIED A DOMESTIC U.S. NEXUS

The domestic nexus is not merely Movant's characterization. Treasury's July 30, 2025, release stated that Defendant had targeted U.S. social-media platforms, U.S.-based journalists, and U.S. citizens, and had directly issued orders to U.S. social-media companies to block or remove hundreds of accounts, including accounts of U.S. persons. Treasury further described the conduct as extraterritorial overreach affecting U.S. persons on U.S. soil. Those Executive Branch findings do not bind this Court on the immunity question, but they are highly relevant to the proposition that the challenged conduct cannot be dismissed as an exclusively internal Brazilian matter.

The Court should also be informed that OFAC removed Defendant from the Global Magnitsky list on December 12, 2025. Candor requires both facts. The later removal avoids any suggestion that Defendant is presently sanctioned, while the July 2025 findings remain part of the public record and demonstrate that the United States Executive Branch previously identified a direct impact on U.S. persons and companies.

## IV. THE NEW BANCO MASTER MATERIAL REINFORCES THE NEED TO DISTINGUISH PUBLIC OFFICE FROM PRIVATE OR EXTRA-JUDICIAL CONDUCT

According to reporting published September 1, 2026, the Federal Police material includes messages in which Vorcaro sought assistance concerning investigative measures and requested that senior officials, including the Director-General of the Federal Police and the Prosecutor General, be approached. Folha reports that investigators attribute some communications directly to Defendant and suspect his involvement in others, but that the documents presently disclosed do not establish that the requested interventions occurred. UOL further reports that Justice Andre Mendonca required the Federal Police to prepare a report concerning references to Defendant, the PF Director-General, and the Prosecutor General, and sought a position from the PGR.

Other reported material concerns a high-value contract between Banco Master and the law office of Defendant's wife, and metadata reportedly associating edits to a contract document with a user name identifying Defendant. The law office has publicly stated that Defendant was consulted concerning possible legal impediments. Again, the Court is not asked to resolve the competing explanations. The limited significance is institutional: Brazilian authorities themselves are now examining facts that may require

differentiation between Defendant's judicial office, personal relationships, and conduct outside adjudication.

That distinction matters here. A foreign official cannot obtain immunity merely by characterizing challenged conduct as official. ***Samantar, 560 U.S. at 325***, recognizes that courts look to the substance of the action and whether the foreign state is the real party in interest. Likewise, when foreign law is relevant, Animal Science instructs that a foreign sovereign's submission is entitled to respectful consideration but is not invariably conclusive. ***585 U.S. at 42-46. Rule 44.1*** likewise authorizes the Court to consult relevant foreign materials independently.

## V. DIRECT TRANSMISSION OF ORDERS TO U.S. COMPANIES IS RELEVANT TO THE COURT'S TERRITORIAL AND OFFICIAL-ACT ANALYSIS

Plaintiffs' supplemental pleading alleges that Defendant transmitted a July 11, 2025, order directly to Rumble's Florida headquarters by email. See Dkt. 46. The Amended Complaint further alleges that Defendant bypassed treaty-based or other recognized international channels and instead used direct coercive demands against a U.S.-based company. See Dkt. 38 paras. 88-89. Those allegations remain for adjudication, but they are directly relevant to the character of the conduct.

Movant does not contend that every order affecting an American corporation must proceed through a treaty. An American company operating in Brazil can be subject to Brazilian law regarding its Brazilian operations. The stronger and narrower point is that when a foreign official purports to command conduct by a U.S.-based company in the United States, reaches U.S.-located accounts or speech, transmits demands directly into the United States, or conditions economic access on compliance with directives whose asserted reach extends beyond Brazil, the Court should independently examine territorial nexus, sovereign attribution, and the nature of the requested relief rather than relying on the official's title alone.

## VI. THE COURT SHOULD NOT ADJUDICATE CRIMINAL LIABILITY, BUT THE RECORD NEED NOT BE SEALED OFF FROM EXECUTIVE-BRANCH REVIEW

Movant recognizes the constitutional separation of functions. Charging decisions belong to the Executive Branch. This Court is not asked to declare that Defendant committed wire fraud, extortion, obstruction, or any other federal offense. Such offenses have specific elements and cannot be established by rhetoric, political disagreement, or the mere use of email to transmit a foreign judicial order.

At the same time, the existence of a civil immunity dispute does not require the Court to ignore a potential domestic federal-law nexus. If

evidence ultimately showed, for example, a scheme intentionally using interstate or foreign communications to obtain money or property by deception, federal wire-fraud law would require proof of the elements of 18 U.S.C. section 1343. If evidence showed obtaining property from another through wrongful use of actual or threatened force, violence, fear, or under color of official right affecting commerce, the elements of 18 U.S.C. section 1951 would have to be examined. If evidence concerned interference with a qualifying U.S. federal proceeding or investigation, the specific obstruction statutes and their territorial requirements would control. Movant does not assert that those elements have been satisfied on the present record; he submits only that federal law-enforcement authorities are competent to make that assessment if the evidence warrants it.

Accordingly, the Court may decide the immunity and jurisdictional issues before it without resolving criminal questions. If the Court independently concludes that materials presented in this action warrant Executive Branch review, it may transmit the relevant filings to the United States Attorney or the Department of Justice without expressing any view as to guilt, charging, or probable cause. That limited referral would preserve institutional roles while ensuring that potentially relevant evidence is

evaluated by the branch constitutionally responsible for federal criminal enforcement.

## VII. RULE 44.1 AND ANIMAL SCIENCE REQUIRE INDEPENDENT, NOT AUTOMATIC, DEFERENCE

Brazil's participation is entitled to respect. But respectful consideration is not equivalent to dispositive acceptance. Animal Science rejected a rule of binding deference to a foreign government's description of its own law and instructed federal courts to evaluate the circumstances, clarity, consistency, and support for the foreign sovereign's position. ***585 U.S. at 42-46***. That principle has particular force where the central dispute concerns whether the individual defendant's challenged conduct should be attributed to the foreign state at all.

The Court should therefore consider the full record: the specific orders directed to Plaintiffs; their mode of transmission; their intended territorial effect; the identity and location of the persons and accounts targeted; the coercive consequences threatened for noncompliance; the relationship between the relief sought and Brazil's treasury or institutional interests; the United States Government's prior findings concerning U.S. persons and U.S. platforms; and the newly reported Brazilian investigative material bearing on the distinction between official and private conduct.

## VIII. REQUESTED DISPOSITION

Movant respectfully submits that the newly identified materials do not decide the merits. They do, however, make categorical treatment of all challenged conducted as protected sovereign action increasingly untenable without an act-specific inquiry. The Court should therefore reject any theory that Defendant's status as an STF Justice alone resolves the immunity or real-party-in-interest question, independently evaluate the nature and territorial operation of the challenged acts, and consider foreign-law materials under Rule 44.1 without treating any party's characterization as conclusive.

Movant further requests, only in the alternative and only if the Court independently determines that the record warrants it, that the Court transmit the relevant materials to the United States Attorney for the Middle District of Florida or the Department of Justice for whatever review the Executive Branch deems appropriate. No finding of criminal liability is requested or necessary.

## CONCLUSION

For the foregoing reasons, the Court should grant leave to file this Supplemental Amicus Curiae Memorandum and consider the newly identified materials for the limited purposes described above.

Respectfully submitted,

Rogerio Chaves Scotton
160 W Camino Real, # 102
Boca Raton, FL 33432
Email: rs@legalhelp4y.com

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of September, 2026, a true and correct copy of the foregoing MOVANT ROGERIO CHAVES SCOTTON'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL AMICUS CURIAE MEMORANDUM REGARDING NEWLY DISCLOSED BRAZILIAN FEDERAL POLICE MATERIAL, EXTRATERRITORIAL COERCION OF U.S. PLATFORMS, AND THE NEED FOR INDEPENDENT OFFICIAL-ACT REVIEW was served via electronic mail and/or through the Court's CM/ECF electronic filing system upon all counsel of record and interested parties, including:1. Plaintiffs Trump Media & Technology Group Corp.
Rumble Inc.
Via Counsel:
Harmeet K. Dhillon, Esq.
Dhillon Law Group Inc.
Email: harmeet@dhillonlaw.com
2. Defendant Madeleine K. Rodriguez (0115796)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: 617-832-1000
mrodriguez@foleyhoag.com
Counsel for Federative Republic of Brazil

Rogerio Scotton
160 W Camino Real, 102
Boca Raton, FL 33432
Phone Number: (561) 878-9001
Email Address: rs@legalhelp4y.com